CLARENCE P. LANKFORD, T. BENJAMIN GREEN, CHARLES W. Long, AND ALBERT MORRIS *vs.* THE COUNTY COMMISSIONERS OF SOMERSET COUNTY.

*Record of Official acts of Executive Department, kept by Secretary of State—Evidence—Constitutional law—Local or Special laws—Subject and Title of Law.*

The record of the official acts and proceedings of the Executive Department, kept by the Secretary of State, as required by section 23 of Article 2, of the Constitution, is competent evidence to show that a bill endorsed by the Secretary of the Senate as having been presented on a particular day to the Governor, for his approval, was in fact presented on a different day.

Section 30 of Article 3 of the Constitution, declares that "every bill, when passed by the General Assembly, and sealed with the great seal, shall be presented to the Governor, who, if he approves it, shall sign the same in the presence of the presiding officers and chief clerks of the Senate and House of Delegates;" and section 17 of Article 2 declares that, "every bill which shall have passed the House of Delegates and the Senate, shall, before it becomes a law, be presented to the Governor of the State; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the House in which it originated. which House shall enter the objections at large on its journal, and .proceed to reconsider the bill; * * * If any bill shall not be returned by the Governor within six days (Sundays excepted,) after it shall have been presented to him, the same· shall be a law in like manner as if he signed it; unless the General Assembly shall by adjournment prevent its return. in which case it shall not be a law." Section 1 of Article 41 of the Code, provides that "every bill, when passed by the General Assembly, shall be returned to the House in which the same originated, and shall, as soon thereafter as practicable, be sealed with the great seal, by the secretary of the Senate or chief clerk of the House of Delegates, as the case may be, and presented to the Governor for his approval; and, in his presence, such clerical officer having custody of the same shall make on the back of every such bill, a memorandum in writing of the day and hour when the same was pre-

Lankford, *et al. vs,* County Comm'rs of Somerset County.

sented to the Governor for his approval; and such officer so presenting the same shall sign his name to such memorandum, and shall make a corresponding entry upon the journal of the House in which the same originated." HELD:

That a bill regularly passed by the Legislature, and sealed as directed by the statute, could be constitutionally presented to the Governor, and signed by him, after the session of the Legislature had closed, provided the signing by the Governor was done within six days from the time the bill was actually presented to him for approval.

The Act of 1890, ch. 538, amending section 54 of Article 33 of the Code of Public General Laws, title "Elections," is not a local or special law, within the prohibitions of section 33 of Article 3 of the Constitution, nor does the fact that the provisions of the Act are restricted, in their application, to about three-fourths of the State, in any way affect its constitutional validity.

The one principal subject of the Act of 1890, ch. 538, being "Elections," and its title being "An Act to repeal and re-enact, with amendments, section 54 of Article 33 of the Code of Public General Laws, title ' Elections, ' and to add new sections thereto," &c. the Act is not repugnant to section 29 of Article 3 of the Constitution, which requires that every law shall embrace but one subject, and that shall be described in its title.

APPEAL from the Circuit Court for Somerset County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*N. Walter Dixon,* for the appellants.

*William A. Fisher,* and *Wm. Pinkney Whyte, Attorney-General,* for the appellees. .

ALVEY, C. J., delivered the opinion of the Court.

This appeal is from a *pro forma* order passed by the Court below, upon an application for a mandamus to the

County Commissioners for Somerset County, requiring them to appoint judges of election in each of the election districts of that county, according to the provisions of Article 33, sec. 40, of the Code of Public General Laws of this State. By the *pro forma* order the petition was dismissed, and the petitioners have appealed.

The appellants, citizens of the State and legally qualified voters of the county, allege that the County Commissioners have neglected and refused to appoint judges of election as required by the provision of the Code; the said commissioners treating and relying upon the Act of the General Assembly of 1890, ch. 538, as a valid and constitutional Act, whereby the power of appointment of judges of election in that county is taken from the County Commissioners, and vested in a Board of Election Supervisors, appointed by the Governor of the State; and the appellants, alleging that the Act of 1890 is invalid, pray that the commissioners may be compelled to appoint the judges of election under the provisions of the Code, irrespective of the Act of 1890, ch. 538. They allege that this latter Act is unconstitutional and void, upon three distinct grounds:

1st. That it was not duly approved and signed by the Governor, within the time required by the Constitution.

2nd. That it is a local or special Act, and, as such, is repugnant to and in violation of section 33 of Article 3 of the Constitution; and 3rd. That it violates section 29 of Article 3 of the Constitution, because the subject of the Act is not sufficiently described in the title thereof.

In the petition it is alleged that the Act of 1890, ch. 538, was *presented* to the Governor for his signature on the 31st day of March, 1890, and was approved and signed by him on the 8th day of April following. But, by the amended answer of the appellees, it is alleged, in denial of the allegation of the appellants, that the session of the General Assembly of 1880, adjourned *sine die*

Lankford, *et al. vs.* County Comm'rs of Somerset County.

on the 31st of March, and that the said Act of 1890, ch. 538, was in fact presented to the Governor duly sealed, for his approval, on the 4th day of April, 1890, and was signed by him on the 8th day of that month, though the bill was endorsed by the Secretary of the Senate, as having been presented to the Governor on the 31st of March, the day of the adjournment of the General Assembly. These facts, thus set up by the amended answer, are shown by the record kept by the Secretary of State, as required by section 23 of Article 2 of the Constitution; and a certified copy of which record has been introduced into the case by agreement of counsel, subject to all legal objections that could be taken thereto as legal and competent evidence of the facts shown by the record. The entries in this record of the official acts and proceedings of the Executive office are very full and explicit as to the fact and time of the presentation of the bill here in question (together with many other bills) in the Executive Chamber, and specially recording the fact that this and the other bills so presented had been endorsed by the Secretary of the Senate, as having been presented to the Governor on the 31st of March, instead of the 4th of April, the true date. The special character of the entries would seem to have been intended to correct the false entries on the bills; and it is not contended that these entries in the record by the Secretary of State are not strictly in accordance with the facts as they occurred; but it is contended that such recorded entries by the Secretary of State are not admissible to impeach or control the endorsements on the bill itself made by the Secretary of the Senate. Or, in other words, that the official endorsements of bills made by the Secretary of the Senate and the Clerk of the House of Delegates are to be taken as conclusive, and that the official record of the acts and proceedings of the Executive Department cannot be ap-

pealed to for the purpose of showing the truth of what has transpired in that department, if in conflict with the clerical endorsements on the bills presented to the Governor.    But to this contention we cannot for a moment accede.    The record kept by the Secretary of State is required by the Constitution to be carefully kept and preserved, and it is competent evidence; and it is entitled to the same degree of credit as that accorded to any other record of mere official acts.    And giving to this record the credit to which it is entitled, it would seem to be too clear for any serious question that the Act assailed by these proceedings was in point of fact presented to the Governor for his approval on the 4th day of April, 1890, after the adjournment of the Legislature, and that the Act was approved on the 8th of April, 1890.

Having disposed of this preliminary question of evidence, we come now to consider the main questions for decision; and the first and principal of these is, was the Act in question signed by the Governor within the time allowed by the Constitution?

1.  As we have just stated, the two Houses of the General Assembly adjourned *sine die* on the 31st of March, 1890, and the Act under consideration was not presented to the Governor for his approval until the 4th day of April thereafter.    He approved and signed it on the 8th of April, and the bill was thereupon deposited in the office of the Clerk of the Court of Appeals, where all bills passed and signed by the Governor are required to be recorded.

The Constitution contains two sections that have direct relation to the subject of inquiry.    The first of these is section 30 of Article 3, the Legislative Article; and the second is section 17 of Article 2, the Executive Article, and which last mentioned section confers upon the Governor the qualified veto power.

Section 30, of Article 3, declares that "every bill, when passed by the General Assembly, and sealed with the Great Seal, shall be presented to the Governor, who, if he approves it, shall sign the same in the presence of the presiding officers and Chief Clerk of the Senate and House of Delegates." And section 17 of Article 2, declares that "every bill which shall have passed the House of Delegates and the Senate shall, before it becomes a law, be presented to the Governor of the State; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large on its journal, and proceed to reconsider the bill; * * * * If any bill shall not be returned by the Governor *within six days,* (Sundays excepted,) *after it shall have been presented to him,* the same shall be a law in like manner as if he signed it; unless the General Assembly shall, by adjournment, prevent its return, in which case it shall not be a law."

While the Constitution declares that, during the session of the Legislature, if the Governor does not return a bill that has been presented to him for approval, within six days after such presentation, (Sundays excepted,) it shall become a law in like manner as if he had signed it, there is no express limitation of time within which he shall sign the bill where it has been presented to him during the session, but an adjournment occurs before the expiration of the six days. In such case, it would seem to be clear, by implication, that the Governor would have the full extent of the six days within which to determine whether he would sign the bill or not. The qualified veto power is conferred upon the Governor for a substantial and important purpose,—to restrain and defeat hasty and inconsiderate legislation. He may defeat the bill by assigning reasons against it during the session of the Legislature, unless overcome by a three-fifths vote of the

members elected to each House; and so he may defeat the bill by refusing to sign it, if the two houses adjourn before the expiration of the six days from the time the bill is presented to him. The six days would clearly appear *by implication* to be allowed to the Governor within which to consider and determine whether any particular bill shall become a law. The right to this time for consideration is clearly not defeated by the adjournment of the two Houses of the Legislature, before the expiration of the six days. There is nothing in the Constitution restrictive of the act of the Governor in such case, except the limitation of six days by implication, and it is very clear that a bill so presented to him may be signed by him at any time within the six days, notwithstanding the adjournment of the two Houses before the expiration of that time. In the event of his signing the bill within the time, it becomes a perfected law, and he does not return it to the Legislature, or to their officers or clerks, but he commits it to the custody of the clerk of the Court of Appeals to be recorded.

If, then, a bill presented to the Governor during the session of the General Assembly, and signed by him within the six days but after the adjournment of both Houses, may become a law, why may not a bill presented by the proper officers of both Houses, as soon as practicable after the adjournment, be signed by the Governor with the same effect? There is nothing in the Constitution that forbids it, unless we hold that the presentation of the bill to the Governor for his approval is a legislative act, and as such can not be performed after the adjournment of the General Assembly. This latter proposition is sought to be maintained by the appellants, and they rely for its support upon some general expressions found in the opinion of this Court in the case of *Hamilton vs. State, ex rel. Wells and Hardesty,* 61 *Md.,* 14. But there was no such question in that case, and none

such was intended to be decided. The question there was, whether the bill had ever in fact been presented to the Governor, and whether it had ever been legally prepared, by having the Great Seal affixed thereto, so as to require the Governor to accept and consider it. Here it is not pretended that the bill was not properly sealed when presented, or that it was not signed by the Governor in the presence of the presiding officers and chief clerks of the Senate and House of Delegates, as required by the Constitution. But it is insisted that these officers had no power to present the bill to the Governor after the General Assembly had adjourned; and if that contention be correct the bill under consideration was certainly not constitutionally signed by the Governor.

But is this contention maintainable? The General Assembly is restricted as to the period of its session, but it may enact laws up to the last moment of its session; and it is matter of common knowledge that many of the most important bills that are passed are frequently not acted upon and passed until near about the end of the session. These bills after their passage are supposed to be in the custody and keeping of the chief clerks of the two Houses; and it is made their duty by statute, (Code, Art. 41, sec. 1,) as soon after the passage of bills as may be practicable, to seal them with the Great Seal of the State, and present them to the Governor for his approval. To do this requires time, and where there are a great many bills passed just in the closing hours of the session, more time would likely be required than would be allowed, if all bills were required to be actually presented to the Governor before the adjournment of the session.

It is earnestly insisted, however, on the part of the appellants, that the terms of the section of the Code just referred to, contemplate and require the presentation of all bills to the Governor during the session of the Legis-

lature, and not afterwards. But we do not so read the statute. It provides that "every bill, when passed by the General Assembly, shall be returned to the House in which the same originated, and shall, *as soon thereafter as practicable,* be sealed with the Great Seal, by the Secretary of the Senate or Chief Clerk of the House of Delegates, as the case may be, and presented to the Governor for his approval; and, in his presence, such clerical officer having custody of the same shall make on the back of every such bill, a memorandum in writing of the day and hour when the same was presented to the Governor for his approval; and such officer so presenting the same shall sign his name to such memorandum, and shall make a corresponding entry upon the journal of the House in which the same originated." It is this latter direction of the statute that is supposed to indicate plainly that the bill should be presented to the Governor during the session of the General Assembly, and not afterwards; as otherwise the chief clerks would have no power to make entries in the journals of their respective Houses. But we do not think this a necessary inference from such. a provision of the statute. It was certainly competent to the Legislature to declare a rule to govern its officers and clerks, even though it might require them to make entries in their journals after the close of the session. But whatever may have been contemplated by the Legislature in the passage of the statute referred to, it is very clear it could not in any manner restrict the legal and rational construction of any of the provisions of the Constitution. The Legislature has, by this statute of 1884, made it the imperative duty of its Chief Clerks to seal and present the bills to the Governor for his approval, as soon after their passage as practicable, and this it was clearly competent for it to do. But these terms, "as soon thereafter as practicable," are of a relative and dependent

8                    v. 73.

character, to be controlled more or less by the circumstances of the case, and by no means furnish a definite and fixed rule. Nor has the construction of the statute contended for by the appellants been acted upon by either the legislative or executive departments of the State. It has been the practice as well since as before the passage of this statute of 1884, to present to the Governor bills in large numbers, after the adjournment of the Legislature, for his approval; and such bills have been signed and recorded as the laws of the State. Of the bills passed at the last session, many of the most important of them, as shown by the record in the Executive Department, did not reach the Governor for his action until the fourth day after the close of the session. It is not for this Court to say whether this be a good practice or not,—we certainly do not commend it. The question for this Court to decide is, whether a bill, regularly passed by the Legislature, and sealed as directed by the statute, can be constitutionally presented to the Governor and signed by him, after the session of the Legislature has closed. In the opinion of a majority of this Court, this may be done, provided the bill be signed by the Governor within six days from the time it is actually presented to him for his approval.

The practice under the veto clause of the Constitution of the United States has been much relied upon in argument,—the veto clause in our State Constitution being similar to that in the Federal Constitution. It is contended that as the practice under, and therefore the practical construction of, that clause of the Constitution of the United States has been to require the President to sign bills before the adjournment of Congress, the same practical construction of a similar clause in our State Constitution should prevail. But the circumstances that gave rise to the practice under the Constitution of the United States have never existed in our legislative proceeding.

Lankford, *et al. vs.* County Comm'rs of Somerset County.

It is true, the general practice of requiring bills to be presented to and signed by the President before the adjournment of Congress has been established and adhered to from the first Congress under the Constitution to the present. That practice, however, seems to have originated in the operation of certain joint rules of the two Houses of Congress, adopted on the 6th of August, 1789, whereby all enrolled bills are placed under the charge of a Joint Standing Committee of the two Houses, and whose duty it is to procure the bills to be signed in each House by the presiding officer thereof, and then to present the same to the President for his approval, and report the fact and time of such presentation to their respective Houses. *Joint Rules,* 6, 7, 8 *and* 9, *of the two Houses of Congress.* See, also, *Jefferson's Manual, sec.* 48, *tit. Assent.* But while such is the Congressional practice, in placing bills before the President for his approval, we are not aware of any judicial construction of the clause of the Constitution which affirms that a bill presented to the President after the adjournment of Congress, and signed by him within the ten days from the time of such presentation, would not be valid as a law of Congress. On the contrary, we think it may be fairly inferred, from the reasoning and judgment of the Supreme Court of the United States, in the case of *Seven Hickory vs. Ellery,* 103 *United States Rep.,* 423, that a bill so presented and signed, if by Congressional authority, would be maintained as a valid law. The case just referred to, in 103 *U. S.* was a case arising on the veto clause in the Constitution of the State of Illinois, which is precisely similar to that in the Constitution of the United States, except in a particular in no manner material to the present question, and it was held by the Supreme Court of the United States, the opinion being delivered by the late Mr. Chief Justice WAITE, that a bill passed by the Illinois Legislature became a law when

it was approved and signed by the Governor of the
State within ten days after its presentation to him;
and this, notwithstanding the fact that, when the bill
was so approved and signed, the Legislature had adjourned
*sine die.*    In that case it appears that the Legislature
adjourned on the 27th of February, 1867, on which day the
bill was presented to the Governor, in whose hands it
remained until March 7th, when it was approved and
signed by him, and delivered to the Secretary of State
to be filed. There was no stress laid upon the fact that
the bill had been presented to the Governor before the
hour of adjournment of the Legislature; but the judg-
ment proceeds solely upon the ground that there was
nothing in the Constitution to prohibit the signing the
bill after the adjournment of the Legislature, if done
within ten days after the bill was presented.    In con-
cluding the opinion the Court said: ''In the present
case the bill was approved and signed within the ten
days, and, therefore, as we think, it became a law from
the date of the approval, notwithstanding the Legislature
was not in session at the time.''    And this ruling of the
Supreme Court of the United States is in accordance
with the ruling of the Court of Appeals of New York,
in *People vs. Bowen,* 21 *N. Y.,* 517, of the Supreme
Court of Louisiana in *State, &c. vs. Fagan, et al.,* 22 *La.
Ann.,* 245, and of the Supreme Court of Georgia in *Solo-
mon vs. Commrs. of Cartersville,* 41 *Ga.,* 157, upon sim-
ilar provisions in the Constitutions of those States.    And
there is nothing in any of these cases to suggest the
idea that the ruling would have been different if the
bill had been presented to the Governor after, instead of
before, the adjournment of the Legislature, in accordance
with a practice that had obtained, such as exists in this
State.    For in the absence of express or clearly implied
limitation, the force of established practice, to aid in
construction, is fully recognized in the cases to which
we have referred.

2. The next question is, whether the Act, ch. 538, contravenes, in any manner, section 33 of Article 3 of the Constitution, in being either a local or a special law, such as is prohibited by that section of the Constitution: The section of the Constitution just mentioned declares that local or special laws shall not be passed in certain enumerated cases; and it also declares that no *special* law shall be passed for any case for which provision has been made by existing general law.

It is very clear that the Act under consideration is not a local or special Act for any of the particular inhibited cases enumerated in the Constitution; nor is it a *special law* or any case for which provision has been made by existing general law.   It is not in any sense a *special* law for any case.

The Act under consideration purports to be a general law, and is amendatory of the general law of the State, passed to regulate the appointment of judges of election, the time, place and manner of holding elections, and of making returns thereof.   The provisions of the Act are restricted in their application to about three-fourths of the State; the remainder of the State being subject, to the pre-existing law for the regulation of elections.

The constitutional provision (Const., Art. 3, sec. 49,) conferring upon the Legislature power to pass laws to regulate elections in the State, does not require that such laws should be uniform throughout the State.   They must be free and equal to all persons entitled to vote; but there is nothing in the Constitution to require the modal proceeding to be the same in every part and section of the State.   To the Legislature is confided the power to pass laws to regulate the subject-matter of holding and conducting elections; and while it may be a subject of regret that the provisions of the statute under consideration were not given application to the entire State, the exception of the nine counties from

their operation does not subject the Act to any such constitutional objection as will invalidate it. No voter is hindered or prejudiced in his right to vote, by the mere difference in the method of conducting the election under the new law from that under the pre-existing law. The object of both laws is the same, the difference consisting only in the form and method of proceeding.

Whether the Act of 1890, ch. 538, be regarded as a general, or as a public local law, would seem to be quite immaterial; though, according to decided cases, it may be regarded as a general law as distinguished from a mere local law. It is said that an Act, within the meaning of the Constitution, may not be absolutely general to the whole State, and yet not be local in a constitutional sense. *People, ex rel. vs. Newburgh, &c. Plank Road Co.,* 86 *N. Y.,* 1, 7. And where the Bill of Rights of a State declared that all elections must be equal, it was held, upon elaborate consideration, that an Act to regulate elections was not obnoxious to any constitutional objection because it did not provide an uniform regulation for all parts of the State. *People, ex rel. vs. Hoffman, et al.,* 116 *Ill.,* 587. The question of the wisdom or policy of such form of legislation is not for this Court to determine; but simply whether the Act under consideration has constitutional validity, and of that we are clearly of opinion it has.

3. The remaining question is one about which little need be said. It is contended by the appellants that the Act of 1890, ch. 538, is repugnant to section 29 of Article 3 of the Constitution, because the subject of the Act is not sufficiently described in its title. There is but one principal subject of the Act, and that is stated to be "Elections." The title of the Act is "An Act to repeal and re-enact with amendments, section 54 of Article 33 of the Code of Public General Laws, title 'Elections,' and to add new sections thereto," &c. In view of the

many decisions heretofore made by this Court upon this question, we can entertain no doubt of the sufficiency of the title of the Act before us.

It follows from what we have said that the order appealed from should be affirmed, with costs to the appellees.

*Order affirmed.*

(Decided 13th November, 1890.)

BRYAN, J., filed the following concurring opinion:

This proceeding is intended to test the constitutionality of the Act of 1890, chapter 538. As no question has arisen on the pleadings, it is unnecessary to consider their details.

The appellants assign three reasons in support of their position that the Act in question is void. They are as follows:

First. That the Governor's approval was given after the expiration of the time, when he could constitutionally approve it.

Second. That it is a special law, and therefore repugnant to the thirty-third section of the third Article of the Constitution.

Third. That the subject is not described in the title, and that therefore in this respect it is in violation of the twenty-ninth section of the same Article.

I will consider the first of these reasons. The requisites to the validity of statutes are prescribed by section thirty of the third Article of the Constitution. When passed by the General Assembly, they are to be sealed with the Great Seal and presented to the Governor; if he approves them, he is required to sign them in the presence of the presiding officers and chief clerks of the Senate and House of Delegates. The Constitution requires nothing more to be done in order to give opera-

tion and effect to laws. No time is limited by the section in question for the presentation to the Governor, or for his signature in case of approval. It is not said that the presentation and signature shall take place during the session; nor is it said that they shall be consummated within a specified time after its determination. If any time is limited for the performance of these acts, it must be sought in other parts of the Constitution. It has been supposed that the seventeenth section of the second Article contains this limitation. This section was intended to enable the Governor to check inconsiderate and ill advised action of the Legislature, by the exercise of the veto power. We think that its language makes this purpose very evident: "To guard against hasty or partial legislation, and encroachments of the Legislative Department upon the co-ordinate Executive and Judicial Departments, every bill which shall have passed the House of Delegates and the Senate, shall, before it becomes a law, be presented to the Governor of the State; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large on its journal, and proceed to reconsider the bill; if, after such reconsideration, three-fifths of the members elected to that House shall pass the bill, it shall be sent, with the objections to the other House, by which it shall likewise be reconsidered, and if passed by three-fifths of the members elected to that House, it shall become a law. * * * * * * * * If any bill shall not be returned by the Governor within six days, (Sundays excepted,) after it shall have been presented to him, the same shall be a law in like manner as if he signed it; unless the General Assembly shall, by adjournament, prevent its return, in which case it shall not be law." The section was intended to provide for the case when the Governor disapproves a bill and for no other

case.   When he approves it, he has nothing to do but to sign it in the presence of the designated officers.  But if he disapproves it, he must return it with his objections to the House in which it originated.   He is allowed a prescribed time for deliberation before he returns the bill. He must return a bill which he wishes to veto within six days after it has been presented to him; that is on or before the sixth day.   But if the Legislature should adjourn before this time his veto power is not defeated; the adjournment cuts off the time allowed the Governor for a return of the bill with his objections, and in this case, it is declared "it shall not be a law;" meaning that a bill which he wishes to veto shall not be a law.   We see in this seventeenth section a statement of the circumstances under which the Governor's disapproval will defeat a bill, which has been passed by both Houses of the Legislature.   It will be observed that nothing whatever is said about his approval of an Act of Assembly except as introductory to the grant of the veto power.   And nowhere in the Constitution, when the Governor approves a bill, is he required to do anything more than to sign it.

It has been suggested that unless some period is fixed within which the Governor is obliged to sign bills, he might retain them for an indefinite time, and cause great public inconvenience by the delay.   It may be answered that all public officers are bound to perform their duties with promptness and diligence.   An unreasonable delay in the discharge of duty is grave misconduct in a public officer.   It would be unbecoming in the Court to anticipate that the Executive Department would neglect its duty.   If unhappily, such an event shall ever occur; we must deal with the case as law and justice may require.   But we are not called upon to lay down in advance a rule to meet this contingency. It is possible that we may some day be obliged to declare

a law invalid because of the Governor's delay in signing it. But that day has not yet arrived. We must never forget that in sustaining a law which has been signed by the Governor, we are giving effect to legislation which has received the sanction of all the branches of the law-making power. The Constitution has provided for defeating an Act of Assembly when the Governor disagrees with the two Houses of the Legislature; but where they all agree, it contains no provisions for defeating their united will. The veto power has usually been regarded with jealousy, and is restricted within well defined limits; but there is no restraint on the Governor's right to agree with the Legislature. That has never been considered as a danger to be guarded against. If there be any designated period within which the Governor is to sign bills presented to him, it may perhaps be inferred from the thirty-first section of the third Article. It is in these words: "No law passed by the General Assembly shall take effect, until the first day of June, next after the session, at which it may be passed, unless it be otherwise expressly declared therein." By the old English law, an Act of Parliament related to the first day of the session, and was operative as a law from that date; although it was frequently long antecedent to its actual passage. The injustice of such a rule is very manifest. Persons might be punished with death for actions, which, at the time of their commission, were not forbidden by any law. It however prevailed until 1793, when the statute 33 George 3, ch. 13, enacted that a statute should take effect on the day it received the Royal assent. In this State no such rule has prevailed since the adoption of the Constitution of 1776. Under that Constitution a law took effect on the day of its passage, unless it contained a clause appointing some other day. But our present Constitution has made the provision

already quoted; therein following the Constitutions of
1851 and 1864.    As the Legislature is obliged to
adjourn about two months before the first of June, the
purpose of this clause must have been to postpone the
commencement of a law to a later day than the former
rule would have required.    The mischief to be reme-
died was that statutes went into effect before they
could become known to the public.    No one imagined
that their operation would ever be delayed later than
the first of June; and therefore no notice was taken of
the probability or possibility of such an occurrence.
The evil was that they went into effect too soon.    I
think therefore that the time, when an Act of Assembly
becomes a perfect and complete law, ought never to be
postponed later than the first of June, unless a later
day is expressly named therein.    Consequently the
Governor must sign it before that day if he intends to
approve it.    It is certainly highly proper that the laws
should be signed before the adjournment of the Legis-
lature when it is practicable; but it is to the last degree
desirable, that the Governor should have ample oppor-
tunity to examine the laws and to deliberate upon
them.    Sometimes important laws containing many
sections and intricate provisions, are passed in the clos-
ing days of the session; the public interest is promoted
by a thorough examination and consideration of them
by the Executive; but the public interest is not preju-
diced by a reasonable delay for this purpose.    At all
events, we find that it has been the settled practice in
this State that bills may be presented to the Governor
and signed by him after the adjournment of the Legis-
lature; and we find nothing in the Constitution which
forbids the practice.    After the session of 1880, which
adjourned April 5th, many laws were signed by the
Governor on the fourteenth of April; and after the ses-
sion of 1882, several were signed on the thirty-first day

Lankford, *et al. vs.* County Comm'rs of Somerset County.

of May.  A different practice prevails under the Government of the United States, and in some other States; but we are not dealing with any law but our own.

After what has been said it is not important to determine whether this law was presented to the Governor on the thirty-first of March, or on the fourth of April. We think, however, after a careful consideration of all the circumstances, that it was presented on the fourth of April.  It was approved by the Governor on the eighth day of the month.  We do not decide this question as an issue of fact on evidence adduced by the parties, or on admissions made by them; but on our constitutional responsibility to take judicial notice of the statute, and of all matters which affect its validity. To enable us to sustain this responsibility, it is our duty to avail ourselves of all trustworthy information within our reach.  On this point the decision of the Supreme Court of the United States, in *Gardner vs. The Collector,* 6 *Wallace,* 499, has been twice approved by this Court.  The closing words of the opinion very clearly express the true doctrine on this point.  "We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a Court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the Judges who are called upon to decide it, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule."

I fully agree with what is stated in the opinion of the Chief Justice in reference to the second and third grounds of objection to the law.

(Filed 13th November, 1890.)

Lankford, *et al. vs.* County Comm'rs of Somerset County.

ROBINSON, J., filed the following dissenting opinion, in which IRVING, J., concurred.

I am obliged to dissent from the judgment of the Court in this case, and this I do with a good deal of reluctance.    I say with reluctance, because the object of the Act in question is to provide additional safeguards to the voter in the free and independent exercise of the right of suffrage, and as such, it must commend itself to all good citizens.    But, however meritorious the Act may be, it is, in my opinion, an invalid Act, because it was signed by the Governor after *the adjournment of the Legislature,* and this he could not do under section 17 of Article 2 of the Constitution.

This section provides that "Every bill which shall have passed the House of Delegates and the Senate, shall, before it becomes a law, be presented to the Governor of the State; if he approve, he shall sign it, but if not, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large on its Journal, and proceed to reconsider the bill; if, after such reconsideration, three-fifths of the members elected to that House shall pass the bill, it shall be sent with the objections to the other House, by which it shall likewise be reconsidered, and if passed by three-fifths of the members elected to that House, it shall become a law   *   *   *   If any bill shall not be returned by the Governor within six days, (Sundays excepted,) after it shall have been presented to him, the same shall be a law in like manner as if he signed it; unless the General Assembly shall, by adjournment, prevent its return, in which case it shall not be a law."

Provision is thus made in the first place that every bill passed by the General Assembly, shall, before it becomes a law, be presented to the Governor, and if he approves it he shall sign it, and thereupon it becomes a

law. If he refuses to sign it, he is required to return the bill to the House in which it originated, with his objections, and if it shall then be passed by a vote of three-fifths of the members of each House, it becomes a law without the signature of the Governor. But should the Governor refuse to sign it, and refuse to return it to the House in which it originated, with his objections, then the Constitution provides, that after the expiration of six days from the time it shall have been presented, the bill shall become a law in like manner as if he had signed it. If, however, the Legislature should adjourn before the expiration of six days, it declares the *bill shall* not *become a law.* The language is plain and explicit, and every provision of this section shows, it seems to me, that the Constitution means that every bill *shall be presented to* and *signed by the Governor during the session of the Legislature.* Otherwise, if it meant that bills should be presented and signed by him after the adjournment of the Legislature, provision would have been made fixing a time within which such bills should be presented and signed. But no such provision is to be found in the Constitution. The majority of the Court have however decided that such bills must be presented to and signed by the Governor within six days after the adjournment of the Legislature. Not that the Constitution so provides in terms, but it is said this is a *necessary implication.* Precisely how, or on what grounds this implication of six days is founded, I do not; I must confess, quite understand. I am glad however, the Court has been able, even by *implication,* to limit the time within which bills may be presented and signed by the Governor after the Legislature shall have adjourned. This may afford some protection at least against the mischiefs which may result from the construction thus placed upon this section of the Constitution. And besides, in construing this section, we must take into consideration the fact,

that it is copied verbatim from the seventh section of
Article 1 of the Constitution of the United States, and
although this clause of the Federal Constitution has not
been interpreted by the Supreme Court, yet it has always
been understood, and such has been the practice from
1790 down to the present time, that every bill must be
presented to and signed by the President before the
adjournment of Congress. Such has been the legislative
construction, by both Houses of Congress from the foun-
dation of the Government. And when this clause of
the Federal Constitution was in 1867 for the first time
in the history of the State made a part of the State
Constitution, the conclusion it seems to me is irresistible,
that the framers of our Constitution and the people who
adopted it understood it in the sense in which it had
thus been interpreted by the Federal Government. It
was so understood and interpreted by every Governor
and by each successive Legislature elected under that
Constitution down to 1880, when for the first time in the
history of the State, bills were presented to and signed
by the Governor after the Legislature had adjourned.
So whatever may be the merits of the Act now before
us, it is better far it seems to me that it should fail for
the time being at least, than to break down the safe-
guards which the Constitution has so wisely thrown
around the enactment of laws.

Besides, there is another objection which in my judg-
ment is fatal to the Act, and that is it applies to the
voters of certain counties, and not to all voters in the
State. The Legislature has no right of course to add
to, or abridge or in any manner impair the qualifications
of voters prescribed by the Constitution, but it may, I
concede, provide reasonable regulations for the exercise
of the right of suffrage, provided however such regula-
tions apply to each and every voter. It has no right to
say that the voters of one county shall not exercise this

right except upon certain conditions, and that voters of
another county may exercise this right without comply-
ing with such conditions. So careful is the Constitution
to preserve this equality, that in the matter of regis-
tration of voters it provides that such laws shall be uni-
form. *A fortiori* ought the regulations and requirement
of this Act, which is known as the Australian Ballot
Law, be uniform, and apply to each and every voter in
the State.—Not only are the qualifications which the
Constitution prescribes for the exercise of the right of
suffrage, uniform, but all regulations in regard to its exer-
cise must, as I construe it, be uniform also. Entertain-
ing these views I am obliged to enter my dissent in this
case.

(Filed 6th February, 1891.)