## SUPERIOR COURT OF BALTIMORE CITY.

Filed December 12, 1924.

MORRIS GROSSFELD AND THE WILSON-NASH MOTORS COMPANY, A BODY CORPORATE,

VS.

E. AUSTIN BAUGHMAN, COMMISSIONER OF MOTOR VEHICLES FOR THE STATE OF MARYLAND.

*Edgar Allan Poe, E. Allan Sauerwein, Jr., George W. Lindsay* and *Murray T. Donoho* for petitioners.

*Assistant Attorney-General Herbert Levy* and *Deputy City Solicitor Wirt A. Duvall, Jr.,* for defendants.

SOLTER, J.—

This petition for mandamus has been brought for the purpose of testing the constitutionality of the Act of 1924, Section 412, adding an additional section to the General Laws of Maryland, relating to the licensing of automobiles. It is unnecessary to set forth the details of the pleading but merely to say they squarely call into question the constitutionality of the act, which is as follows:

141A. The Commissioner of Motor Vehicles is hereby authorized and directed to refuse to issue or transfer any plate or marker, certificate of registration or title for any motor vehicle unless he is satisfied that all taxes due and in arrears thereon have been paid. This section shall only apply to applications made for motor vehicles owned in the City of Baltimore, and provided that this section shall apply only in the case of taxes becoming due and in arrears in the year 1924 and thereafter. Nothing in this act shall apply to commercial trucks.

Section 2. And be it further enacted, That this Act shall take effect June 1, 1924.

(1) The Act is claimed to be unconstitutional upon three main grounds: First, that it violates the Fourteenth Amendment of the Federal Constitution in that it discriminates in favor of commercial trucks, and also that it discriminates against the owners of automobiles in Baltimore City, in favor of the owners of automobiles who reside in the counties of the State. The second ground is that the Act is unconstitutional because it deprives persons of their property without due process of law in that (a) it provides an arbitrary method in the hands of the Commissioner of Motor Vehicles in determining whether the 1924 taxes have been paid; (b) it provides a method which is unworkable because of the lack of co-ordination between the offices of the Commissioner of Motor Vehicles and the Collector of Taxes of Baltimore City. A third reason which is asserted as a ground of its unconstitutionality

is, that it is a special law, passed in violation of Sec. 33 of Art. 3 of the Constitution of the State of Maryland, which provides that the General Assembly shall pass no special law for any case for which provision has been made by a general existing law. There are other objections to the law which will be discussed as the opinion proceeds.

The purpose of the statute is to provide a sure and efficient method of collecting State and city taxes in Baltimore City, the most populous taxing district in the State, upon what are generally known as pleasure vehicles. In itself, it is not a revenue measure, in that its main purpose is not to provide additional revenue for the city and State, but is to insure the State and city being put in possession of that which constructively, at least, it already owns, and is for the purpose of securing equality of taxation among those who should pay. In its general aspects it is in the nature of a remedy for the collection of a debt, in its particular legal aspect it is a *tax penalty.* While the statute purports to be directed toward the licensing of automobiles, which is sometimes regarded as an exercise of its police power by the State, and sometimes as the taxing power, the connection between this statute and the licensing of automobiles is so incidental as to leave no room for doubt, that the Legislature was in this particular instance exercising its tax power. While it is possibly a severe and drastic provision in that it prevents the delinquent taxpayer from having any use whatever of his motor car upon which the tax is due, the legality or illegality must be tested from the standpoint of an ordinary tax penalty.

The rule as to tax penalties is stated in 27 A. & E. Ency. Law at page 780, as follows: "Penalties imposed on delinquent taxpayers not infrequently take the form of restrictions upon the exercise of rights. Thus provision is often made, by constitution or by statute, that the payment of taxes, particularly of the poll tax for the current or preceding year, shall be a condition precedent to the exercise of the right to vote. Similar restrictions are sometimes found in connection with the exercise of rights incident to ownership. Thus it is enacted that conveyances shall not be recorded, nor suit be maintained on a chose in action or debt, nor judgments had in actions for the recovery of real property sold for taxes unless the tax due to the State in respect to the conveyance or subject matter of the suit has been paid and such payment proved in the proper manner." The cases cited by the author in the article amply sustain the statement in the text. In the case of in re Kalana, 22 Hawaii 96, reported in Annotated Cases 1916D 96, before a person could secure a license as a public hackman, it was necessary for him to file a certificate showing the payment in full of all taxes due from the applicant. It was held that the statute was constitutional. The value of the case, however, lies in the distinction which the Court draws between the police power and the revenue power. It was held that the licensing provision was the exercise of a police power, but the requirement as to taxes was an exercise of the taxing power. That the payment of taxes has nothing to do with the qualifications of a public hackman.

It is assumed that in so far as the purpose of the statute is to insure the prompt and certain collection of taxes and thereby equalize the payment thereof by all owners of the motor vehicles the statute is commendable. The great increase in the cost of government directly traceable to the automobile, bringing into effect many governmental agencies and conveniences, designed for the exclusive benefit of the automobilist, calls for an entire willingness on his part to meet his just tax obligations. It is charged, however, that the alleged discriminations in the statute, make it an illegal exercise of the legislative functions and powers. The first discrimination complained of is that the statute excepts from its operation commercial trucks. This, it is claimed, is a denial of the equal protection of the laws—that the distinction between pleasure vehicles and commercial trucks is arbitrary and has no bearing upon the object sought to be accomplished by the Act. Reliance for this proposition by petitioners' counsel is chiefly upon the Broadbelt case, 89 Md. 565. It is true, that this case involved the equal protection of the laws under the exercise of police powers by the State, and it may be conceded that

the principles therein stated regarding the equal protection of the law apply with equal force to the exercise of the powers of taxation. Chief Judge McSherry in the opinion of the Court, says, quoting from Judge Cooley, "The guaranty of equal protection is not to be understood, however, as requiring that every person in the land shall possess the same rights and privileges as every other person. The amendment contemplates classes of persons and the protection given by the law is to be deemed equal, if all persons in the same class are treated alike under like circumstances and conditions, both as to privileges conferred and liabilities imposed. The classification must be based upon reasonable grounds; it cannot be a mere arbitrary selection." And alongside of this may be placed the dictum of Chief Justice Fuller in Grozza vs. Tierman, 148 U. S. 657: "The 14th Amendment was not intended to compel the State to adopt an iron rule of equality as to taxation, nor to prevent the classification of property for taxation at different rates, nor to prohibit legislation in that regard, special either to the extent to which it operates or the objects sought to be obtained by it. It is enough that there is no discrimination in favor of one as against another in the same class." The question of different classification for taxation of pleasure vehicles and commercial trucks has frequently been before the courts of this country, and classifying them differently for taxation purposes has been generally sustained. In Parks vs. City of Duluth, 131 Minn. 296, where a flat rate was charged for business trucks and a sum per horse power for other cars, the Court held that if the classification is made upon a reasonable basis, and is applicable without discrimination to all similarly situated, it is valid. See also Kelleher vs. Portland, 57 Oregon 578.

It should always be borne in mind, however, that in a matter of this character it is not necessary that there should be such an exact exclusion and inclusion of the subjects as would meet fully the approval of the judicial mind. The power is essentially legislative in its character. Kersey vs. Terre Haute, 161 Ind. 471. In Ogilvie vs. Hailey, 141 Tenn. 392, the licensing law imposed what was called a privilege tax for operating automobiles, and the question was squarely before the Court as to whether the statute was unconstitutional because no tax was imposed upon automobiles used for business purposes. The Court upheld the law saying, "the later decisions of this Court and the Federal Supreme Court has conceded to the Legislature a very wide range of discretion in the matter of police and revenue statutes. The idea is that, if any possible reason can be conceived to justify the classification, it will be upheld," citing many cases. These Courts have found there was considerable difference between the two classes from the standpoint of taxation. It may well have been in the mind of the Legislature that generally speaking the bulk of commercial trucks are owned by corporations using them in the pursuit of their various businesses. The purpose of the Act was not only the collection of the tax, but was also intended as an aid to assessment. All corporations are required to make an annual report to the State Tax Commission of their tangible property, which, of course, includes commercial trucks, and this tax is thus in most instances collected. Again, it might have been assumed by the Legislature that taking them as a class and not as individuals, owners of commercial trucks enjoy a higher financial responsibility than owners of pleasure cars; that many are purchased upon partial payments and ownership is difficult to trace even in high priced cars. Certainly when we observe the carefully considered attitude of the courts of other jurisdictions toward the division into classes of pleasure cars and commercial trucks and that the Legislature may lawfully consider them separately in the matter of licensing them and also taxing them, and also bear in mind our own knowledge of the difference of conditions regarding the ownership of the two classes, there is no adequate reason why they should not be recognized by this Court as separate classes for the purpose of tax penalty.

(2) The next objection urged against the Act is that it discriminates between the residents of the city in favor of the residents of the various counties in the imposition of this penalty for the nonpayment of State taxes. The effect of the Act is certainly to keep the automobiles owned by city taxpayers off the roads of the State, when their

State taxes are in arrears, while permitting those owned in the counties to be run upon the roads until they become subject to the penalties imposed in the counties. It is assumed that the only penalty imposed by the counties upon their residents is the subjecting of the owners to suit for non-payment of taxes, obtaining a judgment for the same, and then seizing and selling the automobiles by the ordinary process of execution, permitting the usual exemptions. This is true because each county is a separate taxing district under the Constitution, collecting as does Baltimore City, not only its local taxes assessed by its local taxing board, but as well the State taxes upon all property in such county. Although the State taxes in the counties are collected by a "collector" he operates as to procedure in the main through county officials and by county procedure. It must be borne in mind, that this Act prescribing a penalty for non-payment of State taxes, within the limits of Baltimore City, is an Act of the State Legislature, and is not an act of the Mayor and City Council. The question, therefore, raised is whether the State can prescribe a certain penalty, whether slight or large, for non-payment of taxes due it from a specified kind of property, and exempt the same kind or class of property from the same penalty in another taxing district.

There is no doubt that the constitutional rule as to uniformity does not apply to provisions relating to the collection and enforcement of taxes, and the Legislature may, without violating the principles of equal taxation, discriminate between different counties as to the times at which people shall pay their taxes. The constitutional requirement aims at a certain end and not the manner or mode of reaching that end; and the Legislature may choose different methods for different kinds of property, keeping in view the uniformity and equality of rate which the constitution requires. A geographical uniformity with reference to the mode of procedure is not required for the collection of State taxes. These statements are taken from Cooley on Taxation, 4th Ed., par. 303 to 308.

While the discrimination does seem very sharp in the present case, it certainly is no more pronounced than the usual discrimination shown by the different counties among themselves and Baltimore City with reference to sales of real estate for delinquency in payment of taxes thereon. If the contention is true that there must be exact uniformity in procedure in the various tax districts in this State, it may safely be asserted that probably ninety per cent. of tax sales made can be set aside for this reason. Our statutes abound with differences and discriminations, providing a variation of procedure for the assessment, collection and enforcement of payment of State taxes to such an extent as to show a settled purpose of the Legislature to exercise the right of taxation in a way deemed by it most suited to local needs and conditions, and the judgment of the Legislature is final, so long as it complies with the uniformity and equality of rate which the constitution requires. It is impossible to set out in this memorandum a comparison of these local laws of the counties and city, but a compendium of some of them is attached hereto, with several pertinent authorities.

(3) It is claimed that the statute is unconstitutional because it provides that the Commissioner of Motor Vehicles shall be *satisfied* that all taxes due and in arrears thereon have been paid." Petitioner claims that this phraseology lodges an arbitrary power in the Commissioner and reposes in him a discretion as to proof of payment which may be arbitrarily exercised. It is manifest that the phrase in legal meaning is nothing more than a plain direction to the Commissioner to refuse to issue license tags unless the taxes due and in arrears have been paid. The responsibility of having knowledge of payment is placed upon him by this phrase, and it would be a necessary incident to the issuance of license, if the word "satisfied" had been omitted from the statute. It is easily distinguishable from cases of the type where an arbitrary discretion is vested in a public official or board, as was the case of Yick Wo vs. Hopkins, 118 U. S. 365. In that case the power was given to a board to refuse a permit for a laundry except where the laundry was to be operated in certain types of buildings. In that case there were no rules controlling the discretion nor any fact constituting a basis for the board's action. It was purely an unqualified privilege given the board to grant permits and

there could be no appeal from its decision from the very nature and quality of the privilege. The Supreme Court held that law unconstitutional.

Since the passage of the Act, the Commissioner of Motor Vehicles has asked the Attorney-General for an opinion as to the proper procedure for him to follow with reference to the proof of payment. It appeared that the Commissioner desired a permanent record of some character in his office which would show a compliance upon his part with the Act. It was soon observed that there was objection upon the part of many to leaving their receipted bills and it also appeared that the system of assessing motor cars in the Appeal Tax Court was such that there was no record of any particular car being assessed. The records of the Commissioner's office all centre around the engine number, while the records in the Appeal Tax Court show an as·sessment of the make of car, the type and the year of the model, with no mention of the engine number. It is also true that the records in the Collector's office contain as to each individual's assessment the word "autos" and the amount, and if the taxpayer is assessed for more than one car, the aggregate amount of the assessment upon all cars is his only record. The Attorney-General ruled that the proper interpretation to be placed upon the Act was that the Commissioner must be satisfied that the taxes upon the particular car had been paid, and that he should require a certificate either that the taxes had been paid, or that the car was not subject to taxation. It is argued that because of the lack of correspondence between the records of the Commissioner's office and the Tax Department of the City, the law is unworkable, and therefore unconstitutional; that if the Collector cannot issue the proper certificate exacted by the Commissioner controlling the license of each particular car, and the taxpayer is deprived of the use of his automobile, it is a deprivation of his property without due process of law. The Collector, at the hearing in this case, testified that, while the above facts were true, he could and would keep his records to meet the requirement of the law. Confusion, delay, inconvenience, and some hardship are often unavoidable incidents to the carrying into effect of a new law, but unless the court can see that the law is utterly impracticable in its operation, it obviously cannot hold it unconstitutional.

The final objection to the validity of the Act to be considered is that it is a *special* law, passed in contravention of the constitutional provision of Art. 111, Sec. 33. This provision is as follows: "The General Assembly shall pass no special law for any case for which provision has been made by an existing general law." It is argued that this Act is but a modification of the general law regulating the issuance of licenses throughout the State. The Commissioner is authorized by the general law to issue licenses and transfer titles to all automobiles owned in the State under certain conditions. The present Act is enacted as a *general* law adding another condition to the issuance of licenses. But it is expressly provided in the Act that "this section shall apply only to applications made for motor vehicles in the City of Baltimore." The gist of the argument against the constitutionality of the Act is, first that it is not a repeal of the State-wide law, but is a *modification of it with respect to some people;* that it is a modification of it with reference not merely to the people of Baltimore, but with a certain class who may be living in the counties of the State. The argument is stated as follows: "The individual may have lived in Baltimore and have moved to Allegany County, and may be an actual resident of Allegany County, but if the automobile was *titled* while he lived in Baltimore City, the automobile is within the purview and meaning of the law, an automobile owned in Baltimore." The conclusion deduced from this argument is that this law affects taxpayers *in every county* in the State, although professing to operate upon Baltimore City owned automobiles. This interpretation does not seem warranted by the language of the Act. The Act explicitly applies to motor vehicles owned in the City of Baltimore. This surely can have but one meaning, viz.: Motor vehicles properly assessable to residents of the City of Baltimore. It is as heretofore pointed out essentially a taxing statute and the words "owned" can only mean in this connection "taxable." Each year's taxes stand upon its own footing. It is quite true that if the machine had been titled to a resident of

Baltimore City in 1924 and the owner moves to Allegany County in 1926, not having paid taxes properly assessed against him growing out of his ownership in 1925, the act may be said to affect a resident of Allegany County, but only in such a case. Reliance is had upon the case of Baltimore City vs. Allegany County, 99 Md. 1. In this case there was as the *general statute*, the law controlling the taxes upon corporations. This general law ultimately gave to each county the taxes due upon shares of stock owned by residents of each county. The local Act declared invalid gave to Allegany County *all* taxes upon shares of stock upon certain kinds of corporations. The court held that as the effect of this Act was to take these taxes due Baltimore City and all other counties and gave them to Allegany County, it was not a local law which by its title it professed to be, but was a *special* law giving to Allegany County benefits which under the general law belonged in the decided case to Baltimore City. The analogy fails because residents of Allegany County are only affected during the period of their particular ownership and residence in Baltimore City.

The reason for making this a general law is that the Commissioner is an officer created by the State-wide automobile licensing law. This statute forbids him to issue licenses in a certain instance. The language of the Act (excepting the provision) is in general terms, consistent with its general purpose. The proviso limits its application to Baltimore City in apt terms. In its operation it cannot affect residents of any other county in any way differently from the way any local tax statute affects a taxpayer in another county. This form of a general law excepting from its operation different counties is familiar legislation in Maryland. In Lankford vs. Somerset Co., 73 Md. 105, the court decided that the fact that the provisions of the Act in question were restricted to about three-fourths of the State, did not in any way affect its constitutional validity, and decided that even though it had this restricted application, it was a general and not a local law.

Having thus dealt with all the questions affecting the constitutionality of the statute and finding from my conclusions as above stated that it is con-stitutional, the petition of Morris Grossfeld and the Nash Motors Co., vs. E. Austin Baughman, Commissioner of Motor Vehicles is dismissed, and the writ of mandamus is refused.

---

## SOME DECISIONS AND TYPICAL TAX STATUTES IN MARYLAND.

In the case of Leser vs. Lowenstein, 129 Md. 244, it was held that it was not necessary, under the constitution, in providing for the re-assessment of real estate in Baltimore City, and in the Counties of the State, *for the re-assessment to be at one and the same time*, and that in providing for a general re-assessment of real estate by Chap. 629 of the Acts of 1916, throughout the State, the legislature was not bound by the constitution to include Baltimore City.

In fact, very few of the provisions of the Code of Public *General* Laws with reference to Collectors of State Taxes and the mode of procedure for the collection thereof, are applicable to all of the political sub-divisions of the State.

For instance, Sec. 33 of Art. 81, with reference to the appointment and compensation of Collectors, is, by its terms, not applicable to Harford, Garrett or Talbot Counties or Baltimore City.

Sec. 34, providing for the bond of Collectors, does not apply to Garrett, Talbot, Montgomery or Washington Counties.

Sec. 35 makes a separate provision for the bond of Collector of State Taxes for Baltimore City, and Secs. 36 and 37 providing for the daily deposits of collections and the examination of the books of the Collector of State Taxes refer only to Baltimore City.

Sec. 38, providing for the oath of Collector of Taxes, does not apply to Garrett or Talbot counties, and so on throughout this sub-division of Article 81, various counties are excepted from the various provisions thereof, and some of the provisions relate to Baltimore City only.

Secs. 52 to 67, both inclusive, of Article 81, provide a method of procedure for the collection of State taxes. Here too, most of the sections except

from their operation one or more of the political sub-divisions of the State.

In McMahon vs. Crean, 109 Md. 667, Section 53 of Art. 81, which provides for the place where a tax sale shall be made, was held not to be applicable to Baltimore City, in view of the local law applicable to that City.

In practically all of the counties and in Baltimore City there are local laws which provide methods of procedure for the collection of State and municipal taxes.

For instance, *in Baltimore City*, by Section 49 to 51-A of the Baltimore City Charter (Revised Edition, 1915), provision is made by the mode of procedure in cases of distraint or levy "upon any goods or chattels in said city for non-payment of any taxes, State or municipal, due by the owner thereof."

In *Baltimore City*, by Chapter 429, of the Acts of 1912, codified as Section 58-B of the Baltimore City Charter (Revised Edition, 1915) "State and city taxes may be claimed, sued for and recovered in one claim, suit or other proceeding in the name of the Mayor and City Council of Baltimore."

*Baltimore County.* Time of levy: On or before November 15th (Acts of 1922 Ch. 32). Procedure for collection (Ch. 166, Acts of 1922). County taxes not accepted unless State taxes are paid and vice versa. Date of publication: Month of January in each year succeeding the levy. Time for sale: Six months after 1st of February following publication. Personal property: Special provisions, Acts of 1924, Ch. 489.

*Harford County.* Chap. 9 of Acts of 1924. Time for advertisement of lists of delinquents: October first. Treasurer must proceed to collect after November 15th.

*Prince George's.* Time for distraint: October 1st after arrearage. No lien until distraint is made. List of delinquents: Publication before 1st Monday in March. Procedure entirely different from that in other counties. Sections 217 and 218 of Duckett & Claggett's Code of local laws of Prince George's County.

*Montgomery.* Date of arrearage: January after levy. List of delinquent: January 1st. Date of Sale: Second Monday of April. (Sections 135, 136 and 137 of Ch. 790 of Laws of 1912).

*Queen Anne's County.* Provision for collection of taxes on personal property about to be sold or removed from Queen Anne's County.

Note: Fees of officers for publications, sale, etc., different in all the counties.