(Decided 30th June, 1881.)

THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* THE BALTIMORE CITY PASSENGER RAILWAY COMPANY.

*Taxation of Stock of a Street Railway Company—Tax Commissioner—Construction of the Acts of 1874, ch. 408, 1874, ch. 483, and 1878, ch. 178—Form of Certificate of Assessment—Stock of Non-Residents.*

The Tax Commissioner had power to assess for municipal taxation for the years 1879 and 1880 by the appellant, the shares of stock of the appellee, a street railway company; the performance of this duty imposed on the Comptroller by the Act of 1874, ch. 483, sec. 145, having devolved on the Tax Commissioner under the Act of 1878, ch. 178. In excepting the stock of "railroad companies" from assessment under the Act of 1874, ch. 483, sec. 145, the Legislature meant railroad companies worked by steam, as the Act of 1874, ch. 408, had imposed a tax on the gross receipts of such companies in lieu of other taxation.

The Act of 1878, ch. 178, did not provide in what form the certificate of assessment should be made by the Tax Commissioner; but it should have been of such character as to satisfy the Tax Court, that it was the assessment made by him.

M. & C. C. of Balt. *vs.* The Balt. City Pass. R. Co.

Under the Act of 1874, ch. 483, shares of stock of the appellee, a street railway company, held by non-residents, were liable to taxation, and for the purposes of taxation such shares were situate in the City of Baltimore, where the appellee had its principal office. Under the Act of 1878, ch. 178, it was the duty of the Tax Commissioner to include the shares of such stock owned by non-residents, in his return to the Appeal Tax Court, as·properly taxable in the City of Baltimore.

APPEAL from the Circuit Court of Baltimore City.

This appeal is taken from a *pro forma* decree of the Court below, passed the 1st April, 1881, enjoining the appellant from taking any steps to collect municipal taxes assessed and levied upon the shares of the capital stock of the appellee, a corporation of the State of Maryland, for the years 1879 and 1880. The shares of stock were valued and assessed by the State Tax Commissioner, acting under the authority of the Act of 1878, ch. 178, and an account of the same returned by that officer, in person, to the Appeal Tax Court of Baltimore City, on the 24th and 22nd days of July, 1879 and 1880 respectively. All of the shares of stock so returned by the Tax Commissioner to the Appeal Tax Court, were owned by residents of the City of Baltimore, or by non-residents of the State of Maryland. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, ROBINSON, RITCHIE and IRVING, J.

*James L. McLane, City Counsellor,* for the appellant.

*Arthur W. Machen,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* decree, enjoining the appellant from taking any steps to collect municipal

taxes assessed and levied upon the shares of the capital stock of the appellee, a corporation chartered by and doing business in this State.

It is not contended that there is any provision in the appellee's charter, nor any general law exempting its shares of stock from taxation. The contention however is, that the taxes, the collection of which is now sought to be enjoined, were levied upon an assessment made by the *State Tax Commissioner,* and that this officer had no authority under the law to make such assessment. And this of course depends upon the construction of the Act of 1878, ch. 178, defining and prescribing the duties of Tax Commissioner. Sec. 149 of that Act, provides that he shall assess for State purposes, the shares of capital stock of all corporations chartered by and doing business in this State, whose shares of stock are liable to assessment and taxation by the laws of this State; and he shall have all the powers and perform the duties in reference thereto, which have heretofore devolved upon the *Comptroller.*

The powers and duties of the Comptroller in this respect, are prescribed by sec. 145 of the Act of 1874, ch. 483, which directs, that he shall assess the shares of capital stock of all corporations located and doing business in this State,—" *except railroad and canal companies.*"

It is clear then that the Tax Commissioner has no power to assess the shares of stock of railroad companies, because such shares are excepted from the assessment to be made by the Comptroller under the Act 1874.

The question then is whether the appellee, a street railway company, is a railroad company within the meaning of sec. 145. We are now dealing with an Act of the Legislature providing for the assessment and taxation of property, and the question is not whether the term "*railroad company*" in its broadest sense may not be understood as including a street railway company, but whether as used in sec. 145, in excepting the shares of stock of railroad com-

·34    MARYLAND REPORTS.

M. & C. C. of Balt. *vs.* The Balt. City Pass. R. Co.

panies from assessment by the Comptroller, the Legislature meant to embrace the shares of stock of a *street railway.*

Now in order to understand the meaning of the term railroad company as used in sec. 145, and the reasons why the stock of such companies was excepted from assessment, it is necessary to refer to the Act of 1874, chap. 408, by which it will be seen, that a tax upon the gross. receipts of all *railroad companies worked by steam,* was. imposed in *lieu of all other State taxes.* And hence in the subsequent Act, chap. 483, passed at the same session of the Legislature, providing for the assessment and taxation of property, the shares of stock of railroad companies were excepted from the assessment to be made, by the Comptroller for State purposes. The State had already imposed a tax upon the gross receipts of such companies in lieu of a tax upon the capital stock. •There is, however, no tax imposed upon the gross receipts of a street railway. And when we find in the Act of 1878, chap. 483, provision for the assessment and valuation of the shares of stock of all corporations, chartered by and doing business in this State, and the same provision in every assessment law since 1841, we can hardly suppose the Legislature meant to exempt the shares of capital stock of street railways from taxation. There could be no reason why corporations of every kind should be liable to taxation except street railway companies. And if such had been the intention of the Legislature, it is but fair to presume, that such intention would have been declared in plain and explicit terms, and not left to be inferred by implication or construction.

We are of opinion, therefore, that in excepting the stock of railroad companies from assessment under the Act of 1874, the Legislature meant *railroad companies worked by steam,* and that this exception was made because the State had imposed a tax upon the gross receipts of such

companies in lieu of other taxation. And that it was the duty of the Comptroller to assess the shares of stock of street railway companies. If this be so, then there can be no question as to the power of the Tax Commissioner to make such assessment.

In matters of form, it must be admitted that the certificates of assessment sent by the Tax Commissioner to the Appeal Tax Court, are in many respects defective. The certificate of 1880, is not even signed by the Commissioner. The Act of 1878, does not provide in what form the certificate shall be made, but it ought to be of such a character, as to satisfy the Appeal Tax Court, that it is the assessment made by the Tax Commissioner. In this case, it appears that the certificates were delivered to the local board, by the Tax Commissioner *in person,* and it is not contended on the part of the appellee, that the assessment thus delivered, was not in fact the assessment made by the Commissioner, so far then, as this case is concerned, the defect is one of form, and not of substance.

There is another question to be considered, and that is the liability of the shares of stock of non-residents to assessment by the Tax Commissioner. It must be admitted that the provisions of the Act of 1878, chap. 178, are not as plain and explicit, as might be expected in a statute prescribing the mode and manner of assessment of the capital stock of corporations. When construed, however, in connection with the Act of 1874, chap. 483, to which it is an amendment, there is not much difficulty we think, in ascertaining what the Legislature meant.

By sec. 87, of the Act of 1874, it was the duty of the appellee to make out and deliver to the Appeal Tax Court, an account of the number of shares of stock held by persons *non-residents* of the State, and to pay the tax assessed on such stock, and charge the same to the account of such non-resident stockholders.

And by sec. 142, of the same Act, express provision is made for valuing the stock, owned by non-residents *at the*

*place* where the company has its principal office for the transaction of business.

It is clear then, that the shares of stock held by non-residents are liable to taxation, and that for the purposes of taxation, such shares are situate in the City of Baltimore, where the appellee has its principal office.

Then comes the Act of 1878, which provides that the Tax Commissioner shall assess for State purposes the shares of stock of all corporations liable to assessment.

Sec. 151 of the same Act, further directs that the Tax Commissioner shall deduct from the aggregate value of the shares of capital stock of such corporations, the value of all real estate owned by the same; and that when he shall have made the valuation and assessment of the capital stock of such corporations for State purposes, he shall "certify to the County Commissioners of each county, where any of the stockholders may reside, and to the Appeal Tax Court of Baltimore City, if any such stockholders reside in said city, the assessed value of such shares of stock, after deducting the assessed value of such real property; the shares of stock held in such corporations owned by residents of this State, shall for county and municipal purposes be valued to the owners thereof, in the county or city where such owners respectively reside."

The purpose of this section was, in the first place, to furnish the local boards with the basis of taxation on the shares of stock of all corporations liable to assessment, and in the next, to make the taxes on such shares for county and municipal purposes, payable to the county or city in which such stockholders resided.

The shares owned by non-residents of the State, being declared by sec. 142, of the Act of 1874, to be situated *for the purposes of taxation*, in the city or county where the corporation had its principal office of business, it was in our opinion the duty of the Tax Commissioner under

the Act of 1878, to include all such shares in his return to the Appeal Tax Court, as *properly taxable in the City of Baltimore.*

After providing that the shares of capital stock of all corporations, whether owned by residents or non-residents, shall be liable to assessment and taxation, and providing too, the mode and manner by which the valuation of such stock shall be ascertained by the Tax Commissioner, it would be sticking in the bark, to hold that he was to send to the local boards for the purpose of taxation, the valuation of such shares as were held by residents of the State only, and thereby exempt from taxation, the shares held by non-residents. In making the assessment, it was the duty of the Commissioner to treat such shares as being situate in the City of Baltimore, or in other words, as if such shares belonged to residents of that city.

The *pro forma* order of the Court granting the injunction in this case, must therefore be reversed, and the bill dismissed.

*Order reversed, and*
*bill dismissed.*

(Decided 30th June, 1881.)