## THE MAYOR AND CITY COUNCIL OF BALTIMORE vs. THE COUNTY COMMISSIONERS OF ALLE-GANY COUNTY.

*Taxation—Shares of Stock Liable to Taxation Only in Counties Where Owners Reside—Invalidity of Statute Giving to a County Where Corporation was Created the Tax on Shares Owned by Non-Residents of the County.*

Shares of stock in Maryland corporations are personal property belonging to the respective shareholders, and such property, when owned by residents of this State, can be made liable to taxation only in the counties where the owners reside under Constitution, Art. 3, sec. 51, which declares that personal property of residents in this State shall be subject to taxation in the county or city where the resident resides for the greater part of that year for which the tax may be levied and not elsewhere except goods and chattels permanently located.

Code, Art. 81, sec. 2, directed that shares of stock in corporations created under the laws of this State shall be assessed for the purposes of taxation to the owners thereof in the county or city in which they reside, and under sec. 141 the corporations were required to pay the taxes on the shares of stock to the State and to the different municipalities where the owners reside and charge the same to the shareholders. The Act of 1900, ch. 579, provided that the corporations of Allegany County shall pay the State and county taxes levied upon the assessed value of their capital stocks held by stockholders resident or non-resident of that county but the holders of said stock shall not be liable to taxation upon the stock owned by them. *Held,* that the purpose of the Act of 1900 is to give to Allegany County all the local taxes on all of the stock of its corporations no matter where owned, and consequently repeals by implication as to these corporations the above-mentioned provisions of the Code.

*Held,* further, that the Act of 1900 is invalid because it violates the Constitution, Art. 3, sec. 51, which prescribes that the personal property of residents of this State shall be subject to taxation in the counties where they reside.

*Held,* further, that the Act of 1900 is in violation of Constitution, Art. 3,

sec. 33, which declares that the General Assembly shall pass no special law for any case for which provision has been made by a general law, because, although professing to be a local law for Allegany County, said Act operates in every county where a stockholder of an Allegany County corporation resides and withdraws from these counties by a special provision the tax upon such shares.

Appeal from the Circuit Court for Allegany County (KEEDY, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Edgar Allan Poe* (with whom was *W. Cabell Bruce* on the brief), for the appellant.

*Benj. A. Richmond* and *Albert A. Doub*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This appeal requires us to determine the interpretation and validity of chapter 579 of the Acts of 1900, entitled "An Act to add a new section to Art. 1 of the Code of Public Local Laws, title 'Allegany County,' under the sub-title 'Taxes,' to follow section 230 of said Article, and to be numbered section 230A," which is as follows:

"The incorporated institutions and companies of Allegany County, whether they shall or shall not have declared any dividends or earned any profits, shall pay the State and county taxes levied upon the assessed value of their capital stocks held by stockholders, residents or non-residents of Allegany County; but the holders of said stock shall not be liable to taxation upon the stock held by them."

The case originated in a bill of interpleader filed by the Barton and George'a Creek Valley Coal Company of Allegany County, a body corporate of that county, engaged in mining coal therein, against the County Commissioners of Allegany County and the Mayor and City Council of Baltimore, for the purpose of determining which of the two municipal corporations last named was entitled to receive the taxes upon 500

shares of the capital stock of said Coal Company held and owned in the city of Baltimore, said taxes being claimed by each of said municipal corporations, and the Coal Company being unable to decide between said claimants.

A decree was made by consent requiring the claimants to interplead, designating the Mayor and City Council as plaintiff, and the County Commissioners of Allegany County as defendants, and ordering the Coal Company to pay into Court to the credit of the cause, the amount of taxes admitted to be payable upon said 500 shares of capital stock, if the same was payable to the City of Baltimore, that being larger than the amount payable if the same was payable to Allegany County. The cause was then submitted upon an agreed statement of facts, from which it appeared that the capital stock of said Coal Company consisted of 1,000 shares, of which 498 were held by the Black Sheridan and Wilson Company, a corporation of the State of Maryland, whose certificate was recorded in Baltimore City, and whose principal office and place of business was in said city, and one share was held by H. Crawford Black, and one share by Van Lear Black, both being residents of Baltimore City; and, that of the remaining 500 shares of capital stock, 250 were held and owned by Adam E. Hitchens, and the other 250 shares by the personal representatives of Owen Hitchens, deceased, the said Adam E. Hitchins, and the heirs, personal representatives, and distributees of said Owen Hitchens, deceased, being all residents of Allegany County, Maryland. It was also admitted that the State Tax Commissioner of Maryland had duly valued all the capital stock of said Coal Company for the purposes of taxation for the year 1903, and had duly certified the same both to the Appeal Tax Court of Baltimore City and to the County Commissioners of Allegany County; that the former had valued and assessed the said 500 shares held by the Black, Sheridan and Wilson Company, and by H. Crawford Black and Van Lear Black, to their said respective owners in Baltimore City and had duly levied thereon the proper tax for the year 1903 for Baltimore City; and the latter

had valued and assessed the entire capital stock of said Coal Company (as well the 500 shares owned and held as aforesaid by residents of Allegany County, as the 500 shares owned and held as aforesaid by residents of Baltimore City), to the respective owners thereof, in Allegany County and had duly levied thereon the proper tax for the year 1903 for Allegany County, and that none of said taxes for the year 1903 had been paid to either of said claimants, but that the amount ordered to to be paid into Court had been duly paid in. It was admitted that prior to the enactment of said Act of 1900, the said 500 shares held and owned in Baltimore City had for a long time been valued and assessed to the owners in said city, and the taxes levied thereon had been paid by the Coal Company to the Mayor and City Council of Baltimore, and it was agreed that all irregularities, if any, in any of the proceedings, including the assessment and levy of taxes on said stock should be waived, and that the sole matter to be determined by the Court was the construction and validity of said Act of 1900, as affecting the right of the respective claimants to receive the taxes for the year 1903 upon the shares of stock held by residents of Baltimore City. The right of appeal was reserved to either party, and the decree being against the Mayor and City Council of Baltimore, this appeal has been brought.

It cannot be questioned in this State that the Legislature has the power to fix the *situs* of the capital stock of a corporation for the purposes of taxation, unless restrained by some constitutional provision applying to the enactment drawn in question. The first contention of the appellant is that the Act of 1900, according to the proper interpretation thereof, makes no change, so far as the *situs* of the stock for the purposes of taxation is concerned, in the general law of the State relating to the taxation of stock of corporations. If this position be correct, it will be unnecessary to consider the constitutional objections which would otherwise have to be decided, and we shall therefore consider at once the interpretation of the Act of 1900.

The general law of the State referred to above, is found in

sections 2 and 141 of Art. 81 of the Code of Public General Laws of Maryland.

Section 2 provides that "all shares or interest in any joint stock company    *    *    *    and all shares of stock in any corporation incorporated under the laws of the State, shall be valued and assessed for the purpose of State, county and municipal taxation, to the owners thereof in the county or city in this State, in which the said owners may respectively reside." Section 141 of Art. 81, after providing how the State Tax Commissioner shall ascertain and determine the taxable value of shares of stock in corporations, provides that "the said taxable value of such respective shares of stock in such corporations or joint stock companies, owned by residents of this State, and taxable within this State, shall, for county and municipal purposes, be valued to the owners thereof in the county or city in this State in which such owners shall respectively reside; and the taxable value of such of said stock or shares as are held by non-residents of this State, shall for county and municipal purposes be valued to the owners thereof in the county or city in which said corporation or joint stock company is situated." This section was construed in *Hull* v. *Southern Development Company*, 89 Md. 10, where it was held that such tax was not due by the corporation, but by the individuals who own the stock, and that the corporation is made, for the sake of convenience, the agent of the State and county to collect the tax, and may charge it when paid to the account of such stockholders.

The appellant argues that the only change made in the general law by the Act of 1900, is that the holders of stock in corporations of Allegany County shall not be liable to taxation upon their stock, so that these corporations cannot under that Act, charge the taxes when paid to the account of such stockholders; but that the stock must still be valued and assessed to the owners *in*, and the taxes thereon be levied *by*, the county or city where the stockholders respectively reside, and must still be paid by the corporation, as heretofore, *to* such county or city, and not to Allegany County, except in

the case of stockholders residing there.    But we cannot adopt
this construction.    The obvious purpose of this Act of 1900
was to give to Allegany County *all the local* taxes upon the
assessed value of *all the stock* of *its* corporations, no matter
where such stock was held and owned.    And since it provides
that none of the holders of such stock should be liable to
taxation thereon, and that *those* corporations should pay all
the taxes levied on the assessed value of their capital stocks,
we think this Act, if valid, must be held by clear implication
to repeal, as to corporations of Allegany County, the provi-
sions of secs. 2 and 141 of Art. 81 of the Public General
Code, as to the mode of assessing and levying the taxes on
such stock, and that under this Act, if valid, the ascertained
value of all such capital stock should have been assessed in
Allegany County, not to the respective owners, as was done,
but to the respective corporations, and that the taxes should
have been levied accordingly against those corporations.    It
would seem that it must have been the anticipation of·such a
possible·view which led counsel to insert in the agreed state-
ment of facts, the clause which waives· "all irregularities,.if
any, as to the *form of the assessment and levy* of taxes on said
stock."    The Act of 1900 is an almost literal re-enactment
of sec. 160 of Art. 1 of the Local Law of Allegany County,
Code of 1860, which was before this Court in *Alexander ·v.
Mayor and City Council of Baltimore*, 53 Md. 100, where it
was said, "The effect· of this provision is to make the corpor-
ation liable to pay all the taxes which the stock in the hands
of the ·individual owners *would be* charged with; so that the
·State would get all its taxes at once, and Allegany County
would get all the taxes which would otherwise be distributed
among the various counties or cities where the stockholders
lived."    The appellant contends that this is *obiter dictum*, be-
cause,.it is said, the only question there before the Court, was
whether· sec. 160 of Art. 1 of the Local Code had been re-
pealed by the Act of· 1866, chap. 157, providing for the gen-
eral valuation and assessment of property in the State, as the
Court decided it was; while the appellees contend that in order

to determine whether there was such repeal, it was first nec-
essary to determine the construction of the local law in order
to ascertain whether there was such conflict as to work a re-
peal.   We agree with the view of the appellees upon this
point, and we also agree, as we have said, with the construc-
tion placed upon the local law in 53 Md., *supra*.   When the
Legislature in 1900, re-enacted this repealed local law, in the
same words, it is presumed that they had in mind, and in-
tended it to bear, the interpretation given to it by this Court
in the case cited above which strengthens the conclusion we
have reached in reconsidering its language.

We come now to the consideration of the constitutional
objections urged to this Act.   The first of these objections is
that it is in violation of Art. 3, sec. 51, of the Constitution of
Maryland which declares: "The personal property of resi-
dents in this State shall be subject to taxation in the county or
city where the resident *bona fide* resides for the greater part
of the year for which the tax may or shall be levied, and *not
elsewhere*, except goods and chattels permanently located,
which shall be taxed in the city or county where they are so
located."   We have already said that while "the *situs* of
property of this kind, for the purpose of taxation, is ordi-
narily at the domicile of the owner, the Legislature has the
power to fix a different *situs*, provided of course, there be no
conflict with some provisions in the Constitution."   *Baldwin*
v. *Washington County*, 85 Md. 156.   As to stockholders
non-residents of this State, *and who are not embraced in the
language of the above constitutional provision*, the exercise of
such power was upheld in *Mayor and City Council of Balti-
more* v. *Balt. City Passenger Railway*, 57 Md. 35, and in
*American Coal Company* v. *Co. Commrs. of Allegany County*,
59 Md. 193.   In the latter case JUDGE ALVEY said: "The
American Coal Company is a Maryland corporation, deriving
its existence and all its powers and franchises from this State.
And such being the case, it is settled that the sovereign power
of taxation extends to everything which exists by the author-
ity of the State, or which is introduced by its permission

except where such power is expressly or by necessary impli-
cation excluded.    The separate shares of the capital stock of
the corporation are authorized by its charter, derived from the
State, and are subject to its control in respect to the right of
taxation, and every person taking such shares, whether resi-
dent or non-resident of the State, must take them subject to
such State power and jurisdiction over them.    Hence the
State may give the shares of stock held by individual stock-
holders, a special or particular *situs* for the purposes of taxa-
tion, and may provide special modes for the collection of the
tax levied thereon."    In the last clause of the passage just
quoted it must of course be understood that only non-resi-
dent stockholders are referred to, as only these were before
the Court, and the taxing power of the Legislature as to these
was not restricted by the Constitution.    In an earlier part of
the same opinion, in speaking of the same general provisions
for taxation of stock which are now the law of this State, the
Court said: "The manifest design of the law, so far as the local
right of taxation is concerned, is to give to the City of Balti-
more, and to each of the counties, the full benefit of all the
taxable property, having either an actual or constructive *situs*
within their respective limits;" and hence it held that where
58,700 shares of stock out of a total number of 58,800 in an
Allegany County corporation, were owned by non-residents
of this State, the Legislature could fix their *situs* for taxation
in Allegany County and that the policy of the law as it was
declared was thereby effectuated.    That policy as to personal
property of residents of the State, is fixed and imbedded in
the Article of the Constitution above.    It is founded on the
15th Article of the Declaration of Rights, which requires
every person in the State to contribute his proportion of public
taxes for the support of the government according to his actual
worth in real or personal property, and is a recognition of the
fundamental principle that taxes are paid in return for the pro-
tection and services of government, from which it results that
local taxes upon personal property, not permanently located
elsewhere, should be rendered to the local government, which

gives protection and renders service to the person, and to the personal property which follows his domicile. As pertinent illustrations of the application of these principles, and of the policy of the law as declared in 59 Md., *supra*, we may cite the case of *Bonaparte* v. *Mayor and City Council of Balt.*, 63 Md. 465, where an executor living in Baltimore County, took letters testamentary from the Orphans' Court in Baltimore City upon the estate of a deceased resident of that city, where the Court held that "personal property of an intangible nature, not permanently located elsewhere, *such as bonds and stocks*, must be deemed to remain within the jurisdiction of the Court pending the settlement of the estate, and be there liable to taxation." Also the case of *Baldwin* v. *Washington County*, *supra*, where a guardian appointed by the Orphans' Court for Washington County, and his ward both resided in New York, but the Court, nevertheless, held that the property of the ward in the custody of his guardian was subject to taxation under the Code, Art. 81, sec. 9, in the county where the guardian was appointed. The latest case in this State upon the *situs* of taxation of stock is the *Mayor and City Council of Balt.* v. *Safe Deposit and Trust Company* to be reported in 97 Md. 659, in which it is held that where property is capable of a two-fold *situs* for taxation, the Legislature may select either as the place where the tax shall be laid, and that the Act of 1902, chapter 486, which provides that railroad stocks and bonds held in trust, shall for purposes of taxation, be treated as belonging to the *cestui qui trust*, and not to the holder of the legal title, did not violate either Article 15 of the Bill of Rights, or sec. 51, of Art. 3 of the Constitution. In this case the Court was careful to say, "We must not be understood by what we have said in this opinion, to hold that the Act of 1902 is valid or effectual in so far as it may conflict with the special provision made by sec. 51 of Art. 3 of the Constitution for the taxation of goods and chattels permanently located or of mortgages and the debts thereby secured, or that the Act was intended to apply to leaseholds or any other interests in lands."

No Maryland case has been cited, and we know of none, either deciding or intimating that shares of stock held by a resident of the State can be taxed elsewhere than at the *bona fide* residence of the owner.

If shares of stock are personal property, belonging to the holder of the shares, the position of the appellant upon the point we are now considering, needs no argument to support it. In passing upon this question, the Judge of the Circuit Court in the course of his able opinion, said that shares of stock are muniments and evidences of a holder's title to a given or designated share *in* a portion of the property and franchises of the corporation of which he is a member, rather than the property itself.   *   *   *   And unless the substance is taken in place of the shadow, the thing itself for the evidence thereof, then the State is taxing the shadow, and not the substance causing the shadow, muniments of title, and not that to which title is held.   Shares of stock are intangible, and the Legislature, in and by the Act in question, has only substituted the tangible for the intangible, the substance for the shadow."

But it will be seen by a comparison of the language of the Act of 1900, with that of sec. 141 of Art. 81 that it makes no such substitution.   Each of these enactments deals with precisely the same subject-matter, the assessed or taxable value of shares of stock, ascertained and fixed in each case in the same mode and by the same machinery.   If under the general law, sec. 141 of Art. 81, the State is taxing the shadow and not the substance, it is doing this none the less under the Act of 1900.   Under one, the assessed value of the shares of the respective owners are valued (or charged) to them respectively, while under the other, the aggregate assessed value of all the shares of all of the respective owners are (or should be) valued (or charged) to the corporation.   The only material change is in the requirement that all the local taxes levied on all the stock, shall be paid to Allegany County, instead of being distributed among the various counties where the respective stockholders live, thus clearly demonstrating that the

sole real purpose of the Act was to devote the whole of this local tax to Allegany County  If this be forbidden, as we think it is, by the section of the Constitution referred to, the argument of the appellees that as the wealth of Allegany County is made up largely of coal mines operated by corporations like the one in question, and that as this source of wealth is decreased from year to year by the removal of the coal, and as the cost of police protection to the property of these mining corporations is borne by Allegany County, justice requires that all the local taxes on the stock should be paid to that county, would in no event be a consideration to be addressed to the Court.

But can it be seriously questioned that shares of stock are personal property of the respective owners for the purpose of taxation?  We think not.  Desty in his work on taxation, vol. 1, p. 364, says, "The property of a corporation, and the shares of stock may be taxed, they being different properties ; " and again, on p. 355, he says : "the property in shares of stock is completely vested in the owner." *Cook on Stockholders*, vol. 1, sec. 12, says :  "Stock, though personalty, is not a chattel ; it is rather a chose in action, or as some older authorities declare, *property* in the nature of a chose in action."  And in sec. 565, speaking of the right of a Legislature of a State to tax its citizens, who are stockholders in a foreign corporation, upon their shares of stock, at their residence, he says:  "This principle of law is based on the fact that shares of stock are *personal property*, and are distinct from the corporate property, franchises and capital stock."  In *Farrington* v. *Tennessee*, 95 U. S. 687, the Supreme Court of the United States said : "The shares are held and may be bought and sold, and may be taxed like other property."  In *U. S. Electric Light and Power Company* v. *The State*, 79 Md. 70, this Court, speaking of shares of stock in the company, said: "These shares are *property*, and under existing law, *taxable property*, and belong to the shareholders respectively and individually."  We cannot, therefore, adopt the view of the learned Judge below, and must hold that these shares of stock are personal property

belonging to the respective shareholders, and are within the scope and operation of sec. 51 of Art. 3 of the Constitution of Maryland.

It is further objected that the Act in question violates section 33 of Article 3 of the Constitution of Maryland, which provides that "the General Assembly shall pass no special law for any case for which provision has been made by a general law;" since provision has been made by an existing general law for the taxation of shares of stock in the hands of the owners and to the owners, at their places of residence, while by this Act, all shares of stock in any corporations of Allegany County, are assessed and taxed in Allegany County to these corporations, and the shareholders are exempted from taxation thereon.    In *Cooley's Constitutional Limitations*, 165 note; it is said : "The term *general*, when used in antithesis to *special*, means relating to *all* of a class, instead of to *persons* only, of that class."    In *Bouvier's Law Dictionary*; Rawle's ed., p. 1034, it is said : "The features of local and special legislation overlap, but they are not coterminous.    The matter to which a local law relates may be either general or special, but in either case the law itself is not in force outside of the locality for which it is passed."    Recognizing this distinction, this Court, through JUDGE ALVEY, in *State* v. *County Commissioners*, 29 Md. 520, said : "Local laws of the class to which the Act under consideration belongs, are distinguished from public general laws only in this, that they are confined in their operation to certain prescribed or territorial limits."    The Act of 1902, though professing to be a local law for Allegany County, is not confined in its operation to the limits of that County.    It operates in every county in the State in which there is resident any stockholder of an Allegany County corporation, and withdraws from every such county, under a special provision, relating to one class of corporations only, the tax upon shares of stock held by residents of such county, which under the existing general provision would go into the treasury of every such county.    If this law is valid, a similar law, professing to operate only in Baltimore City, would be

valid, although it would in fact operate in every county in the State where stock in Baltimore corporations was held by residents of the counties, with the effect not only to deprive the county treasuries of the tax upon such stock payable to them under the existing general law, but also to subject these stockholders indirectly to the increased rate of taxes imposed by Baltimore City for the numerous benefits, in their nature available only for residents of that City.

For the reasons stated the decree of the lower Court will be reversed, and the cause be remanded in order that a decree may be passed in conformity with this opinion.

*Decree reversed and cause remanded.*

(Decided March 23rd, 1904.)