## BOARD OF EDUCATION OF FREDERICK COUNTY v. MAYOR AND ALDERMEN OF FREDERICK, ET AL.

[No. 99, October Term, 1949.]

172

*Decided December 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Robert E. Clapp, Jr.,* for the appellant.

*W. Clinton McSherry* and *James McSherry,* with whom was *Richard E. Zimmerman* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The question in this case is whether a statute which empowers the Mayor and Aldermen of Frederick, a municipal corporation, to condemn a specific piece of property, located within the corporate limits of the City of. Frederick, and belonging to the Board of Education of Frederick County, is a local law within the meaning of Article XVI of the State Constitution, so that it may be referred under that Article to the voters of Frederick County.

It appears from the record that the land comprising the campus upon which the Frederick High School is located, was purchased by the Board of Education in the fall of 1938. At that time it contained some 39 acres of land with access from existing streets, but without danger to the student body from these streets. At the time of the purchase, the City of Frederick desired to extend its existing park system, and in compliance with this desire, a tract of six acres from the northerly portion of the 39 acres was sold and conveyed to the City as an addition to a public park. The remaining acres were developed for school purposes. The present high school building was placed on a portion of them, and the part to the north was designed for grass plots, for future use for experimental agricultural plots, and for public buildings. So far as appearances went there was no division between the school tract and the six acres conveyed to the city for a park. In the spring of 1948, a tract of land lying north and west of the school tract was purchased by some private parties for the purpose of building an apartment project. The city agreed with these private interests to construct a street through the high school campus. After a contract to that effect was signed, the County Board of Education was consulted, but the Board unanimously disapproved the suggestion. The City then attempted to condemn the land. The Board of Education filed a bill in equity to enjoin this condemnation, and after the case was fully heard, the court held

that the City was without authority to condemn the land of another public body, and dismissed the bill. (See *Northern Cent. Ry. Co. v. Mayor & City Council of Baltimore,* 133 Md. 658, 106 A. 159.) The General Assembly of 1949 then passed Chapter 591 of the Acts of that year. This act added a new section to the Charter of Frederick, contained in Article XI of the Code of Public Local Laws of Maryland, title "Frederick County", sub-title, "Frederick City", sub-heading, "Streets". This new section, known as Section 270A, empowered the Mayor and Aldermen of Frederick to condemn in accordance with the public local laws of Frederick County a specific parcel of land belonging to the Board of Education "now known as the Frederick High School ground and lying adjacent to a stream known as Carroll Creek and the lands owned by the City". The land authorized to be condemned is not to exceed 60 feet in width and 1160 feet in length. The act provided that it should take effect June 1, 1949. Subsequent to the passage of the act there were circulated through Frederick County petitions for a referendum on this act, under Article XVI of the Constitution of the State. These petitions allegedly contained the signatures of more than 10 per centum of the votes cast for Governor in Frederick County in the last general election, and this would result in the act being referred to the voters of the County and its suspension pending the result of the vote. A bill of complaint was thereupon filed by the Mayor and Aldermen of Frederick, and two residents and taxpayers of the City and County of Frederick, brought on behalf of all other taxpayers desiring to become complainants, for the purpose of enjoining the Secretary of State and the members of the Board of Supervisors of Elections of Frederick County from placing the referendum petition on the ballots at the election to be held in the month of November, 1950, and for the further purpose of declaring that Chapter 591 of the Acts of 1949 went into full force and effect on June 1, 1949. The Board of Education of Frederick County, on its petition, was made party to the suit, and filed a combined demurrer

and answer. The City demurred to a part of the answer. Both demurrers, however, were overruled, testimony was taken, and the Chancellor ruled that Chapter 591 was not referable, but went into full force and effect on June 1, 1949. The injunction asked was granted against the Secretary of State and the Board of Supervisors of Elections. This appeal was taken from the decree by the Board of Education alone.

Two minor contentions are that the Mayor and Aldermen of Frederick have no sufficient interest to bring the bill of complaint, and that there is no showing that the interest of the individual complainants, Price and Brunk, is sufficient in amount to give jurisdiction to a court of equity. We think it is implicit in the authority of a municipal corporation to take necessary legal action to put in force its ordinances, or any amendment to its charter. The fact that the point might be determined in a condemnation case is not sufficient reason to hold that a city may not, in advance, seek to check a referendum which would have the practical effect, at least, of putting off any condemnation until after the voters had passed upon the question. The city has the right to have determined whether it has the present power to open a street, a matter peculiarly within its province, and one which may be important for many reasons. In any event, the taxpayers interested in avoiding the waste of funds derived from taxation, which would be involved in conducting a referendum, have a right to bring such action in representation of all other taxpayers who may be involved. *Sun Cab Co. v. Cloud,* 162 Md. 419, 159 A. 922. It is our conclusion on this part of the case that proper parties brought the suit, and the equity court had jurisdiction.

The Referendum Article of the Constitution was submitted to the people of the state by the Act of 1914, Chapter 673, and was ratified by the voters on November 2, 1915. In a case involving the provisions of this article, decided in 1917, there is contained a discussion of its purposes. It was stated that, after the Civil War, abuses

began to creep into legislation, which were alleged to have grown out of the control of the legislators by great corporations and by political parties, by means of which it was felt that the government was prostituted to corrupt and selfish purposes. Proposals were made to abolish the principle of representation and to adopt the principle of initiation of legislation by the people, and the principle of referring legislation already adopted by the Legislature to the people. The last of these proposals was adopted by this state in the Referendum Amendment, and this Court said "The referendum, broadly speaking, is the reservation by the people of a state, or local subdivision thereof, of the right to have submitted for their approval or rejection, under certain prescribed conditions, any law or part of a law passed by the law making body. It was designed as a modification of, or as a supplement to the principle of representation with which we had long been familiar, and it was claimed for it that it would prevent the recurrence of many of the abuses to which we have referred." *Beal v. State,* 131 Md. 669 at page 678, 103 A. 99, at page 102.

The Referendum Article provides for the submission to the registered voters of any act or part of any act of the General Assembly (Section 1(a)), but by Section 3(a) it is provided that a public local law for any one county or the City of Baltimore shall be referred by the Secretary of State "only to the people of said County or City of Baltimore, upon a referendum petition of ten per cent. of the qualified voters of said County or City of Baltimore as the case may be, calculated upon the whole number of votes cast therein respectively for Governor at the last preceding gubernatorial election." When sufficient petitions have been filed before the first day of June, the act then petitioned against shall not take effect until thirty days after its approval by a majority of the electors voting thereon at the next ensuing election for members of the House of Representatives. (Section 2.) This is not true of an emergency law, but the act in question here was not passed as an emergency law.

The sole question here is whether the act is a local law within the meaning of the Referendum Article.

There are exceptions contained in the Article itself to the kind of laws which may be referred. No law making any appropriation for maintaining the State Government, or for maintaining or aiding any public institution, not exceeding the next previous appropriation for the same purpose, shall be subject to referendum. (Section 2.) Nor shall any law or constitutional amendment licensing, regulating, prohibiting, or submitting to local option the manufacture or sale of malt or spirituous liquors be referred or repealed under the provisions of the Article. (Section 6.) These are the only specific exceptions, but this court has made a further exception. This exception is of those acts which, although local as distinguished from general, are confined in their operation to part of a county, and should, obviously, not be properly referred to all of the voters of a county, many of whom have no interest in them. This implied exception is the one under which the appellees claim the act in question belongs. The appellant, on the other hand, contends that while the act is, in form, an amendment to the charter of Frederick, it nevertheless vitally affects the whole school system of Frederick County and, therefore, is a proper one to be referred to all the voters of that county.

Cases in which this implied exception was made began with *Strange v. Levy*, 134 Md. 645, 646, 107 A. 549, 550. In that case there was an act passed creating the office of President of the Annapolis Water Company and imposing upon the counselor and one of the minority members of the Board of Aldermen the duty of being directors of the Annapolis Water Company. This act was made an emergency law under the Referendum Article. The Court said that the Referendum Article was "clearly not intended to apply to public local laws for any city other than Baltimore City, *there being no provision for a referendum except in cases of public general laws applicable to the State, and public local laws for a county*

*or the City of Baltimore."* (Emphasis supplied.)   It was
held that the law in question was a public local law for
the City of Annapolis, and, as there was no provision in
the Referendum Article applicable to such a law, it did
not come within the purposes and provisions of that
Article.   In the case of *Richardson v. Blackstone*, 135
Md. 530, 109 A. 440, the court had before it Chapter
163 of the Acts of 1918, amending the Charter of the
Town of Crisfield.   This act was put into effect by a
simple statement that it took effect on the date of its
passage which was April 10, 1918.   This court held that
as this act related only to the town of Crisfield, it was
not subject to the Referendum Article, and could be
made to take effect at once, without the passage of an
emergency clause, such as is required in acts subject
to that Article.   The next case, which is the one principal-
ly relied upon by the appellees, and which was the basis
of the decision in their favor by the Chancellor, is *Din-
neen v. Rider*, 152 Md. 343, 136 A. 754, 755.   In that
case the Legislature had passed Chapter 539 of the Acts
of 1924, erecting a specific portion of Baltimore County
contiguous to Baltimore City into the "Baltimore County
Metropolitan District", and had placed it under the ad-
ministration of the Board of County Commissioners as
its governing board.   The purpose was to provide the
populous territory of the county adjacent to the City,
with adequate water supply, and sewerage and storm
water drainage systems.   The Commissioners were in-
vested with the right of acquiring the necessary property
by purchase or eminent domain, except that no property
could be condemned within the limits of Baltimore City,
and none of the properties, plants, franchises, and rights
of the Mayor and City Council of Baltimore could be
taken without the consent of the City authorities.   The
funds for the purpose of the act were to be provided by
bonds issued upon the faith and credit of Baltimore
County, subject, however, to the provisions that the ag-
gregate amount of such bonds outstanding for any pur-
pose under the act should at no time exceed seven per

centum of the total assessable basis within the metropolitan district. The interest and sinking funds for these bonds was to be provided (1) by charges for connection, (2) by annual assessments on the properties within the district binding upon the streets etc. on which a water main, sewer or drain had been built, (3) if these were insufficient a tax upon all taxable property in the water, sewerage, or drainage subdistricts within the metropolitan area, and (4) finally, if such tax did not produce a sufficient sinking fund, then an annual levy against all taxable property in Baltimore County. The act contained the emergency law provision required by the Referendum Article. It was contended that, as it changed the salaries and duties of the County Commissioners, it could not be so put in effect under the Referendum Article. The court held that the declaration that it was an emergency measure was nugatory, as actually the enactment did not come within the terms of the Referendum Article. It said "It would be a manifest incongruity for all the voters of Baltimore City or of a county to have the right to approve or reject a public local law affecting and operative primarily within a limited portion of the territory of either." Then on the authority of *Strange v. Levy, supra,* and *Richardson v. Blackstone, supra,* the court held that the act was not within Article XVI, "since the area constituting the Baltimore County Metropolitan District is a part only of Baltimore county." Another case similar in character to *Strange v. Levy, supra,* and *Richardson v. Blackstone, supra,* is *Culp v. Commissioners of Chestertown,* 154 Md. 620, 141 A. 410, which was concerned with an act providing for the construction of roadways, sewers and sidewalks in the Town of Chestertown, and the issuance of bonds. It was held that this act did not come within the provisions of Article XVI.

The general question of what is a local law involves many considerations. Some laws, local in form, affect the interest of the whole state. In *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, 192 A. 531, 537,

an act requiring the use of voting machines in Baltimore City was attacked on the ground that it was a local law for Baltimore City and, therefore, could not be passed by the Legislature, because Baltimore had home rule under Article XI A. In that case the court said, "While it is difficult to formulate a comprehensive definition of the distinction between a public local law and a public general law, it may be said that a 'public local law' is a statute dealing with some matter of governmental administration peculiarly local in character, in which persons outside of that locality have no direct interest, and a 'public general law' is one which deals with a subject in which all the citizens of the state are interested alike, and the fact that it permits or directs differences in matters of mere administrative detail suited to the peculiar needs of localities does not make it any the less a public general law." The court held in that case that the statute was a public local law only in the sense that it operated in Baltimore City, but that it also regulated the manner in which citizens of that area might exercise voting rights which affected citizens within the whole state. It was, therefore, not a public local law, within the meaning of Article XI A of the Constitution.

In *Bradshaw v. Lankford,* 73 Md. 428, 21 A. 66, 11 L. R. A. 582, 25 Am. St. Rep. 602, where an act submitted to the voters of certain election districts of Somerset County, the question whether or not the taking of oysters by scoop or dredge within the waters of that county should be prohibited, the court said that such a question was not a local question which could affect only the people of the districts adjacent to these waters. It affected all the people of the state, because the oyster beds belonged to the state and the common right of the people of the state to take oysters there could not depend upon the result of a public vote of people residing within any given districts of a county. In the case of *Gaither v. Jackson,* 147 Md. 655, 128 A. 769, 773, the City Council of Baltimore had passed an ordinance licensing auctioneers, and it was claimed that this was

their right under the home rule amendment, Baltimore City having adopted a charter under that amendment. The Court said that the ordinance not only withdrew from the Governor the power to appoint auctioneers, but deprived the state of the revenue theretofore received by it. It held that the ordinance was not a local law and the City Council had no power to pass it, saying "* * * the mere designation of a law as a local law or its treatment as such by the General Assembly, does not make it a local law for all purposes * * *. A law is not necessarily a local law merely because its operation is confined to Baltimore City or to a single county, if it affects the interests of the people of the whole state." A similar statement was made in the case of *Dasch v. Jackson*, 170 Md. 251, 183 A. 534, 538, which involved an act providing for the licensing and regulating of paper hangers in Baltimore City. The court said "* * * a law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." In the case of *Norris v. Mayor and City Council of Baltimore, supra,* already discussed, the voting machine law of Baltimore City was held not to be a special law or a purely local law, but an adaptation of a general law to the needs and conditions of a particular locality.

By analogy to the decisions in these cases a local law which on its face appears to apply only to the City of Frederick, and to the condemnation of a piece of property within the geographical limits of that City, and to be an amendment of a municipal charter, may, notwithstanding its form, be in effect a local law affecting the entire county. There can be no doubt the Frederick High School is not a city school. The title to the property is in the Board of Education of Frederick County. The Board is the agent of the county in looking after the buildings and grounds, and the funds for their upkeep are county funds requested from the County Com-

missioners of the County. *Clauss v. Board of Education,* 181 Md. 513, 30 A. 2d 779, *Board of Education v. Lange,* 182 Md. 132, 32 A. 2d 693. This high school was constructed from Federal funds granted to Frederick County under the Public Works Administration, and the proceeds of bonds issued by the County Commissioners of Frederick County. (*Commissioners of Frederick County v. Board of Education,* 175 Md. 277, 1 A. 2d 628.) More than half the High School students in the County attend this high school, although there are five others in the County. At least 500 of these students came from outside of the limits of the City of Frederick, being brought to the School by public school buses. Certain courses are given only in this school, and as a result, county students who wish these courses must attend this school if they wish to receive instruction in certain subjects. The bonds for the construction of the school are paid by County taxation. Under our school law County Boards of Education are chiefly responsible for public education in the counties of the State. *Board of Education of Prince George's County v. County Com'rs.,* 131 Md. 658, 102 A. 1007. Any diminution of the grounds of the High School is a matter in which all the people of the county are interested. The fact that the construction of a street through the grounds increases the hazards to the students, is a matter of interest to the people of the county who presently or potentially send their children there. While the opening of streets in a municipality is generally purely a matter for the municipal authority, the fact that this particular act does not concern the municipality alone is shown by the fact that, in the absence of such an act, the City was held not to have authority to condemn land of a county agency, and, therefore, it became necessary to have an act passed for that purpose. Such an act affects the county agency and the people of the county who support and pay for that agency, and who receive the benefits of its proper operation. To paraphrase *Gaither v. Jackson, supra,* the law is not necessarily a municipal law merely be-

cause its operation is confined to a town, if it affects the interests of the people of the entire county.

The appellees, however, contend that the meaning of "Public Local Law" in the Referendum Article is geographical, and that any law which primarily affects geographically only a portion of a county, is not a public local law subject to referendum, whatever may be its construction for other purposes under the cases we have referred to. They contend that this is shown by the decision in *Dinneen v. Rider, supra,* chiefly relied on by them and held by the Chancellor to be controlling of this case. They point to the fact that the act in that case did potentially affect the people of the whole county because there was a possibility of a tax being levied on the entire property of the county. But, nevertheless, since the act primarily (as said by the court) affected only a part of the county, it was not referable. We are unable to agree that geography alone determines the character of an act. We think the Referendum Article intended the term "Public Local Law" to have the same general meaning as it had for other purposes, and to be judged by the same rules of construction. The exceptions which this court found to exist in the Annapolis, Crisfield and Chestertown cases, were obvious exceptions, because the acts construed in those cases had no possible interest for the parts of the several counties not included within the limits of those towns.

The case of *Dinneen v. Rider* is somewhat different, but we think it is clearly distinguishable from the case before us. In that case the whole question was providing water, sewerage and drainage facilities for the Metropolitan District of Baltimore County. The only way in which the people of the balance of the county outside of that district were affected was by the very remote possibility that they might have to pay in taxes for some of the improvements if, and only if, the charges, assessments and taxes levied within the District were not sufficient. It was obvious that the thickly settled portion of the county, adjacent to Baltimore City, which

comprised the Metropolitan District, was the chief source of taxation, and the outlying districts, consisting of small towns and country property, were very unlikely to ever be called upon to have to pay anything and might be entitled to re-imbursement from the Metropolitan Area. This conditional liability was thought by this court to be too remote to justify the submission of a question affecting the health of the residents in the metropolitan area to voters in remote country districts which had no interest in accomplishing the purposes of the act. It concluded that the Referendum Article did not intend such a result, and that such a vote was not within the contemplation of that Article. The situation is entirely different here. The people of Frederick County, as a whole, pay for the upkeep of the schools, including Frederick High School. Many of them outside of the City send their children to that High School. They are interested in seeing that the school is maintained as an up-to-date, modern educational institution, with sufficient grounds and space for additional buildings, if necessary. They are entitled to pass upon the question whether the condemnation of a street through the ground will interfere with the proper administration of the High School. We think that the act is a local act affecting all of Frederick County, within the meaning of the Referendum Article, and, therefore, it can properly be submitted to the voters of the county.

So finding, we hold that the decree of the lower court should be reversed and the bill dismissed.

> *Decree reversed and bill of complaint dismissed with costs.*