FUNK ET AL., COMMISSION ON PREVAILING
WAGES  *v.* MULLAN CONTRACTING CO. ET AL.

[No. 128, October Term, 1950.]

*Decided February 8, 1951.*

*Petition for rehearing and modification of opinion, filed March 7, 1951, denied March 14, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Harrison L. Winter*, Assistant Attorney General, with whom was *Hall Hammond*, Attorney General, on the brief, for appellants.

*Wilson K. Barnes,* with whom were *Anderson & Barnes,* on the brief, for appellee, Mullan Contracting Co.

Submitted on brief by *W. Hamilton Whiteford* and *Paul F. Due* for appellee, Associated Sewer & Water Contractors.

MARBURY, C. J., delivered the opinion of the Court.

Four corporations, each engaged in the contracting business in the State of Maryland, each a taxpayer of the State, and each doing a substantial portion of its business in performing contracts with the State of Maryland, (one, over $3,000,000.00 during the past two years; one, $500,000.00 during the same period; one, $190,000.00, and one, $878,000.00) joined with four individuals, each of whom is a property owner and taxpayer in the State, and with a member-corporation consisting of 141 individuals who are general contractors in the State, employing in excess of 1200 people, it being also a taxpayer of the State, filed a bill of complaint against six defendants who constitute the Commission On Prevailing Wages of the State of Maryland, created by Chapter 30 of the Acts of 1950. The bill is filed not only on behalf of the complainants but also on behalf of all taxpayers of the State who may wish to join in the suit. It is contended by the complainants that this Act is unconstitutional and void for a number of reasons, and the Circuit Court No. 2 of Baltimore City was asked to so declare it, and to restrain the defendants from acting as a purported commission under its authority and from carrying into effect its provisions. To this bill of complaint the defendants demurred. The demurrer was overruled, an answer was then filed, testimony was taken and a stipulation filed, and the chancellor, by his decree, declared Chapter 30 to be unconstitutional, and enjoined the defendants from attempting to act under it. From this decree, the defendants took this appeal.

Appellants contend that the appellees have no standing to maintain this suit. They say that neither as tax-

payers, nor as persons engaged in the contracting business, have they sufficient interest in the subject, that none of their legal rights has been violated, and therefore the bill must be dismissed. The commission attempted to be created by Chapter 30 of the Acts of 1950 was authorized by that Act to prescribe maximum hours of work for all laborers, workmen, and mechanics employed by any contractor in the execution of any contract for the State in the construction of buildings, roads or bridges. The Commission was also authorized to promulgate schedules of prevailing wages for the various areas of the State, and any contractors with the State should not pay wages less than those promulgated by the Commission. Civil and criminal penalties were provided in the Act to aid in its enforcement. Appellants say that no contractor has a right to a contract for State work; that the State has a right to fix the hours of work and the wages to be paid in contracts made with it; that the four contractors have no standing under these conditions, as such; that the association of contractors has no standing whatever, and that taxpayers have no right to prevent the enforcement of a criminal statute. They cite in support of the last proposition the recent case of *Hammond v. Lancaster*, 194 Md. 462, 477-478, 71 A. 2d 474, 479. In that case, which was brought to challenge the constitutionality of the Subversive Activities Act, Chapter 86 of the Acts of 1949, the majority of the court in its opinion said: "Moreover, the general rule is that equity will not interfere to prevent the enforcement of a criminal statute, even though unconstitutional."

While it is true that the Act of 1950 does contain penal provisions, and, to that extent at least, is a criminal statute, these provisions are merely for the purpose of enforcing the main purpose of the Act. The bill of complaint sets out that the effect of the Act in establishing schedules of wages will materially increase the cost of construction work of the State of Maryland, and thereby place an additional burden upon the taxpayers

of the State. A taxpayer is entitled to invoke the aid of a court of equity to restrain the action of an administrative agency of the State, when such action is illegal and may injuriously affect the taxpayer's rights or his property, (*Masson v. Reindollar*, 193 Md. 683, 69 A. 2d 482) and his right to make such a claim does not depend upon the result; that is, he may be wrong in his contention, but nevertheless he has the right to invoke the aid of the courts to make it. In this case, there is a contention that the Act creating the Commission is void, and that the effect of acting under it will be to increase the cost to the State, and therefore to the taxpayers, of all of its construction work. We think the appellees, as taxpayers, were entitled to bring this suit. The case presented here is materially different from that in *Phillips v. Ober*, 197 Md. 167, 78 A. 2d 630. In that case, it was not alleged that the taxpayers would be pecuniarily affected. In the case before us, it is so alleged.

The first contention we are called upon to consider is the authority of the General Assembly to pass such an Act as Chapter 30 at the short session of 1950. This raises at once the question what is the authority given the Legislature in the 30-day sessions authorized by Sec. 15 of Article III of the Constitution. The section as it now reads was submitted to the voters by the Act of 1947, Chapter 497, and adopted by them at the November election in 1948. Governor O'Conor had previously appointed a Commission on the Distribution of Tax Revenues, headed by Judge Joseph Sherbow. This Commission made a notable report on September 30, 1946, making numerous recommendations which were for the most part adopted by the Legislature. One of these was improvement in the State budget procedure, by having annual, rather than biennial budgets. This would necessitate annual sessions of the Legislature which had not been previously authorized, and would require an amendment to the Constitution. The Sherbow Commission recommended the submission to the voters

of the State of such an amendment. The Legislative Council submitted to the General Assembly a proposed amendment providing for yearly sessions without any restrictions as to what might be considered therein. This was amended in the Legislature by the insertion in the proposal submitted to the people of the following words:

"In any of said thirty-day sessions in even years, the General Assembly shall consider no bills other than (1) Bills having to do with budgetary, revenue and financial matters of the State Government, (2) legislation dealing with an acute emergency, and (3) legislation in the general public welfare."

It is apparent, therefore, that the main purpose of providing for 30-day sessions in the even years was to enable annual budgets to be submitted for the State Government, and that the amendment, while it did not wholly restrict these sessions to budgetary matters, did place certain restrictions upon the character of legislation which should be considered. This is a clear departure from the ordinary authority to consider, in the regular 90-day session, or in any special session, all matters that might properly be brought before the General Assembly, although there are already prohibitions in the Constitution against the passage of certain laws. (See, for instance, Sec. 33 of Article III). *Section 15* provides a new restriction upon the right of the Legislature to pass *any* legislation at the short even year sessions except that enumerated, or, perhaps a better way to express it is to say that it has no authority to pass any legislation at such sessions other than that enumerated.

It is not contended in this case that *Chapter 30* was passed, or could be passed, under *clauses (1) and (2)*, but it is earnestly urged on the part of the appellants that it is "legislation in the general public welfare" *under clause (3)*.

Every measure passed by a legislature is supposed to be in the public welfare, whether the Act is local,

general, or special. It is obvious, therefore, that had the term been merely "public welfare" instead of "general public welfare", the doors would have been wide open. Something was meant by the use of the word "general", and it becomes our duty to interpret that word *as used in the constitutional amendment.* We think that should be done, not only with reference to definitions to be found in a dictionary (for instance, as opposed to "particular"), or its meaning in other connections (such as the definitions under the general welfare clause of the Federal Constitution), but also in the light of well known public conditions existing at the time of its adoption.

It has been a matter of complaint for many years that the unrestricted consideration of the vast number of local measures introduced in the Legislature, and the consequent delay and last minute crowding of the calendars, has impeded and interfered with the proper consideration of statewide legislation, not only in the way of taking up the time of the senators and delegates, but also because the interest of the legislative sponsors in these local measures often exceeds their interest in public matters to such an extent that their votes on the latter might be adversely and improperly influenced by the votes of other members for or against their local legislation. To put it more bluntly, these local measures provide a fertile field for deals and trades whereby valuable legislation in the interest of the State may be defeated, or other legislation, not in such interest, may be passed. One of the methods attempted to prevent this unfortunate situation was to adopt a home rule amendment, Article XIA of the Constitution. See *State v. Stewart,* 152 Md. 419, 422, 137 A. 39; *Schneider v. Lansdale,* 191 Md. 317, 61 A. 2d 671. This situation was undoubtedly in the mind of the Legislature when it considered the amendment of Sec. 15 of Article III. It was not a new problem. As we have shown in *Schneider v. Lansdale, supra,* it had existed at least as far back as 1706, and it was discussed and deplored every time

the Legislature met. So far as the regular sessions were concerned, the Legislature did not attempt to remedy it in its proposed amendment to Sec. 15, but it evidently had this evil in mind, and intended that no such situation should be tolerated in the 30-day even year sessions. We conclude, therefore, that by the use of the word "general", the Legislature meant to restrict itself in these sessions to matters generally affecting the State, rather than affecting parts thereof.

Before the Legislature of 1950 met, the Legislative Council requested an opinion of the Attorney General on the subject, and it was given to Horace E. Flack, Secretary and Director of Research, on July 5, 1949. (See 34 *Opinions of the Attorney General*, 130.) In that opinion, the Attorney General took somewhat the same position as he does today in representing the appellants, that is, general public welfare means welfare affecting the whole State, *or a substantial part thereof.* The General Assembly of 1950 attempted to screen all legislation, in accordance with this opinion, by having all bills introduced referred to committees which had the special duty of deciding which were and which were not prohibited by the constitutional restrictions. They did not bar Chapter 30, presumably for the same reasons that it is now defended here, namely, that the establishment of hours of labor and the determination of prevailing wages for State contracts was a matter that affected the whole State.

We are not required on this record to determine whether acts covering subjects of interest and importance to the entire State, and by their terms applicable thereto, might not be legislation in the general public welfare, even though their actual geographical impact is upon parts of the State only. We have here no such situation. The Commission on Prevailing Wages, created by Chapter 30, is authorized to fix the generally prevailing wages in the different areas and localities within the State and such prevailing wages shall be paid to laborers, workmen and mechanics employed by a contractor in

the execution of any contracts for the State for the construction of buildings, roads or bridges, but Sec. 81(b) provides that it shall not be construed to repeal or modify in any respect Sec. 7A of Article 89B of the Annotated Code, 1947 Supplement, as that section applies to contracts by the State Roads Commission for road work. This Sec. 7A was enacted by Chapter 999 of the Acts of 1945, and provides that when a contract for work shall be given out to a private contractor by the State Roads Commission, the Commission shall require that not less than the prevailing wage rates of the locality in which the work is to be done are to be paid. The prevailing wage rates for the purposes of the section are declared to be "predetermined wage rates as filed with the United States Department of Labor". Baltimore City and twenty counties are excepted from the operation of that Act, which leaves it applicable only to Garrett, Allegany and Washington Counties. Chapter 30, therefore is applicable to Baltimore City and twenty of the twenty-three counties, but in the other three, the Commission created by that Act has no authority over wages to be paid for State road work.

Appellants contend that legislation in the general public welfare means public general laws, and they cite in that connection the distinction made in *Norris v. Mayor and City Council of Baltimore*, 172 Md. 667, 192 A. 531, and the late case of *Board of Education v. Mayor and Alderman of Frederick*, 194 Md. 170, 69 A. 2d 912. This last case involved the meaning of the term "local law" within the Referendum Article of the Constitution. In general, there are three classes of laws which the Legislature passes. These are special laws, local laws, and general laws. Local laws are those which are confined in their operation to certain prescribed or defined territorial limits, although they may be applicable to all persons within these limits. *State v. Baltimore County Commissioners* 29 Md. 516, 520. *Baltimore City v. Allegany County*, 99 Md. 1, 12, 57 A. 632. General laws are defined in the Constitution with respect to the Home

Rule article as any laws "so drawn as to apply to two or more of the geographical sub-divisions of this State". Article XIA, Sec. 4. Special laws are those which relate to particular persons or things of a class, as distinguished from general laws, which apply to all things or persons of a class. *Prince George's County v. Baltimore & O. R. Co.*, 113 Md. 179, 183, 77 A. 433. If we adopt the view that all laws which are public general in form affect the general public welfare, then Chapter 30 is not within the prohibition of Sec. 15. It seems clear to us, however, that the constitutional prohibition goes further than this. It would have been very easy to have prohibited all legislation except public general laws. There is no such prohibition, and there is an implied negative that any was intended by the exception of legislation dealing with an acute emergency. Such an emergency might be local. It was not intended, therefore, that the Legislature could pass only public general laws, nor can it be held that it can pass any sort of law, provided it is a public general law. We think the term "general", as used in Sec. 15 of Article III of the Constitution, is intended to mean legislation that applies to all of the State without exception. Were it not so intended, it would be an entirely useless provision. A public general law might be passed affecting two or more counties or from which any number of counties, or the City, might be excepted, although the subject might affect them all. *Lankford v. Somerset Co.*, 73 Md. 105, 118, 20 A. 1017, 22 A. 412, 11 L. R. A. 491. Thus, any amount of local legislation might be passed in that form, and the entire purpose of the restriction which we have heretofore discussed would be thwarted.

The provision for the 30-day session of the Legislature in the even years is, as we have shown, an entirely new provision in our State government. Before the passage of the amendment, the Legislature met every two years for ninety days, and could be called in special session by the Governor whenever he thought it advisable, but such special sessions could last only for thirty days.

The provision for the new regular short session did not take away any of the powers the Legislature already had. It provided, in addition, another session at which, however, the power to pass legislation was not to be unlimited. We think Chapter 30 was within the restriction set out, was not in the general public welfare, and, therefore, was not within the power of the Legislature to pass at the 1950 session.

Our conclusion on this point renders it unnecessary for us to consider the other objections raised to Chapter 30, and we, therefore, refrain from passing upon them.

The decree must be affirmed.

*Decree affirmed with costs.*

HENDERSON, J., filed the following dissenting opinion.

The words "general welfare" in the federal constitution have been accorded the widest imaginable scope, and the addition of the word "public" imposes no additional limitation. Still, in the light of the legislative history and in the context, I should agree that the word "general" may properly be construed as the antithesis of "local" or "special", so as to include only those acts dealing with problems that concern the citizens of the State as a whole rather than of particular localities. In Maryland we have long been familiar with the distinction between public general and public local laws; cf. *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, 681, 683, 192 A. 531. Now, however, the majority of the court adopts a novel construction that requires a general law passed at a short session to be absolutely uniform in its application in every part of the State, the challenged Act is general in its terms and in almost all of its applications. The only exception is that in three counties determination of the prevailing rate of *per diem* wages, to be paid for state road work, is left to the United States Department of Labor as required by existing law. In this one particular field and specific area, the Commission is authorized and directed to accept the findings of fact

made by a federal agency, rather than to make independent findings of fact upon which enforcement is predicated. To my mind the generality of the legislation is not destroyed by a geographical variation in detail that accomplishes the ultimate purpose in a slightly different way. I think the constitutionality of the act should be sustained.